### HASHAGEN v. UNITED STATES. †

(Circuit Court of Appeals, Eighth Circuit. April 26, 1909.)

No. 2,769.

1. PERJURY (§ 34*)—EVIDENCE—WEIGHT—SINGLE WITNESS—CORROBORATING CIRCUMSTANCES.

   A conviction of perjury may be sustained by the testimony of a single witness corroborated by circumstances proven by independent evidence sufficient to warrant the jury in saying that they believed one rather than the other, as where the evidence of one witness with other facts and circumstances proved are more than sufficient to counterbalance the oath of defendant and the legal presumption of his innocence.

   [Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 125–132; Dec. Dig. § 34.*]

2. PERJURY (§ 34*)—EVIDENCE—FALSITY OF TESTIMONY.

   In a prosecution for perjury, the testimony of one witness and corroborating circumstances *held* sufficient to sustain a finding that the evidence alleged to have been perjured was false.

   [Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 129, 130; Dec. Dig. § 34.*]

In Error to the District Court of the United States for the Eastern District of Missouri.

Thomas T. Fauntleroy (Shepard Barclay, on the brief), for plaintiff in error.

Henry W. Blodgett, U. S. Atty.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

RINER, District Judge. On the 20th day of March, 1906, the plaintiff in error, hereafter called the defendant, was indicted in the District Court for the Eastern Division of the Eastern District of Missouri for the crime of perjury. The indictment, in substance, charged that one Fred W. Hashagen was adjudged a bankrupt on the 13th day of December, 1905, by the District Court for the Eastern Division of the Eastern District of Missouri; that the case was referred to a referee; that, in the course of the administration of the bankrupt estate, Henry Hashagen, a brother of the bankrupt, pursuant to an order of the referee, appeared before him, was sworn and examined in relation to the property owned by the bankrupt, what disposition the bankrupt had made of his property and effects, and also whether any of the property and effects of the bankrupt had been concealed or secreted on the premises known as "Hashagen's Auditorium" in the city of St. Louis, where he formerly conducted his business. It is then charged in proper form that the defendant falsely, willfully, and corruptly testified that he had no knowledge of any property having been removed from the premises known as the "Hashagen Auditorium" in the city of St. Louis, where the bankrupt formerly conducted his business; that he, the defendant, never took any property away from the premises; that no other person had ever

taken any property away from the premises at his request; that he never requested any one to secrete or hide any property in or upon the premises, and had no knowledge that any property had been secreted or concealed in or upon the premises; whereas, in truth and in fact, he, the defendant, then and there well knew that a large amount of property belonging to the bankrupt, describing it, had theretofore been removed from the premises by himself and another, who, at his request, assisted in removing it, and that he had requested certain other persons to secrete and hide, in and on the premises, other property described in the indictment. The indictment is in two counts, but, as the second count is substantially the same as the first, it need not be separately mentioned. To this indictment the defendant entered a plea of not guilty, a trial was had, resulting in a verdict of guilty, and a judgment was entered thereon sentencing the defendant to imprisonment in the Montgomery county jail for a term of six months.

, It is conceded, or at least not denied, on the part of the defendant: (1) That the proceeding before the referee in which the oath was administered was a proceeding in which the oath was authorized; (2) that the defendant, having been sworn, gave ·evidence therein; (3) that his testimony as set out in the record was given; (4) that it was material to the issue or point of inquiry, leaving only the question of the falsity of his testimony for determination. At the close of all of the evidence the defendant requested the court to instruct· the jury to acquit, which request was denied, and this action of the court is the only assignment of error relied upon in this case.

In order to determine this question, it becomes necessary to examine the evidence offered by the government in support of the indictment. In doing so, we adopt in part the abstract of the evidence found in the government's brief. Six witnesses were sworn for the government, but as the testimony given by two of them, relating to some sheet music and a small stereopticon, was withdrawn from the consideration of the jury by the court, it will not be necessary to consider it.

Theodore Bierey testified that he had been employed at Hashagen's Auditorium as a bartender prior to February 6, 1906; that he had taken some property from the auditorium under the direction of Henry Hashagen right after Christmas, 1905; that Henry Hashagen had asked him to, and he did take certain property, describing it, to his house to keep it there until the bankruptcy case was concluded; that the defendant requested him to secrete certain other property in the cellar and bury it in the cinders so that the trustee would not find it; that the defendant was present and helped him cover this property with cinders; and that the defendant requested him to secrete other property, some of it over the ceiling and some of it underneath the stage.

George Neff testified that he was employed as an engineer at the Hashagen Auditorium during the month of December, 1905; that he had been employed there for about two years; that he operated two picture machines, and was employed at that place at the time Fred Hashagen went into bankruptcy. The witness testified in regard to

the picture machines, or stereopticons, and that a bill of sale had been executed to him for the large one, without consideration, by Henry Hashagen, so that he could claim it at the time of the hearing in the bankruptcy case. He corrected this statement, however, in answer to a question by the court, as follows:

"The Court: Q. Let me understand. You got the bill of sale for that machine from whom? A. Henry Hashagen. Q. And not from Fred? A. I mean, from Fred. Q. And not from Henry? A. No, sir.

"The Court: Now, then, that explains it. He says that it was from Fred all the time.

"The Court: Q. In your examination you mentioned Henry. Then you were mistaken as to that? A. Yes, sir; I mean Fred.

"Mr. Blodgett: There is no dispute about that.

"The Court: But in his testimony he said Henry.

"Mr. Blodgett: He afterwards corrected it. I concede it was Fred."

This witness also testified that he had secreted some property in the basement at the request of the defendant.

William C. Connett testified that he was the trustee of the Fred W. Hashagen estate; that he was appointed on the 3d of January, 1906, and took charge of the estate; that he thereafter went out to the Hashagen Auditorium and took official charge of the property there; that the defendant went over the premises with him and pointed out what property belonged to the bankrupt; that he then had appraisers appointed, and went back and listed the property which was there; that the defendant went around from place to place and showed him and the appraisers all the property which he said belonged to the bankrupt; that at the time he took official charge of the premises he saw Bierey, Neff, the defendant, and the sheriff, who was then in charge; that on the occasion of his first visit, in a conversation had with the defendant, he asked him where Fred was; the defendant replied that he was not there at that time; that he then requested the defendant to show him the property which belonged to Fred; that the defendant took him over the premises and pointed out the various pieces of property which belonged to the bankrupt, also certain property which he said belonged to him, and certain other property which he said belonged to other people; that he asked the defendant at the time to show him all of the property that belonged to the bankrupt; that none of the property described in the indictment was pointed out to him by the defendant; that the defendant told him that the property he had pointed out was all of the property of the bankrupt; that the property described in the indictment was subsequently discovered, part of it secreted at different places on the premises, and part of it at Bierey's house. He then described in detail the property found at the different places.

H. G. Cleveland testified that he was appointed one of the appraisers in the Fred W. Hashagen estate; that he visited the Hashagen Auditorium on February 6th or 7th, in his official capacity; that he discovered certain property, describing it, under a pile of cinders in the basement next to the engine room, and other property between the rafters on the ceiling of a water-closet, under the stage, and in a closet in another portion of the building.

We have thus set out at some length the substance of the testimony offered on behalf of the government. It is contended by the defendant that he cannot be convicted of the crime charged in the indictment except upon the testimony of two credible witnesses, or of one credible witness who must be corroborated strongly by other evidence as to the falsity of defendant's statement under oath. He insists that there is no corroboration of Bierey's testimony; that finding the property at the place where Bierey said it was secreted only corroborated Bierey as to that fact, and not as to his statement that he secreted it there at the request of the defendant. Standing alone, that would probably be true, but the record shows that the defendant, at the time the trustee took possession, pointed out the property which he said belonged to his brother, and assured the trustee that that was all of the property on the premises which was owned by his brother, and in addition to that we have the statement of Neff that he secreted certain property at the request of the defendant. The record shows that the defendant had been employed there for a number of years by his brother, and was entirely familiar with the premises and with all of the property, so that the case does not rest alone upon Bierey's testimony and the property secreted by him, but is to be determined from a consideration of all of the facts and circumstances disclosed by the evidence at the trial.

It was formerly held, Archibald's Criminal Pleading, 157, that:

"Upon an indictment for perjury, there must be two witnesses; one alone is not sufficient, because there is in that case only one oath against another."

In Starkie's Law of Evidence, the rule is stated thus:

"It is a general rule that the testimony of a single witness is insufficient to warrant a conviction on a charge of perjury. This is an arbitrary and peremptory rule, founded upon the general apprehension that it would be unsafe to convict in a case where there is merely the oath of one man to be weighed against another. Nevertheless, it very frequently happens, in particular cases, that the testimony of a single witness preponderates against the limited testimony of many."

And the same author again says:

"So, in the case of perjury, two witnesses are essential; for otherwise there would be nothing more than the oath of one man against that of another, upon which the jury could not safely convict."

But this strictness has long since been relaxed, and we find many cases in the books where convictions have been sustained upon the testimony of a single witness, corroborated by circumstances proved by independent evidence sufficient to warrant the jury in saying that they believe one rather than the other. In other words, the evidence of the witness, together with the other facts and circumstances proved on the trial, must be something more than sufficient to counterbalance the oath of the defendant and the legal presumption of his innocence.

After a careful examination of the record, we are of opinion that the evidence, upon the whole, was sufficient to warrant the submission of the case to the jury, and the judgment of the District Court is affirmed.