### Gordy Harris v. State.

## Opinion delivered June 21, 1915.

1. Perjury—Materiality of False Testimony.—In a criminal prosecution for grand larceny of a certain cow, deceased as a witness for defendant, testified falsely, as to the number of head of cattle that he had sold to a partner of the prosecuting witness. *Held,* the testimony, though false, could not be made the basis of a prosecution for perjury, since it was not material to the issue of whether defendant had stolen a certain cow.

2. Perjury—Materiality of False Testimony.—In perjury cases it is not necessary that the false testimony should tend directly to prove the particular issue in the trial in which it is given, but if it is circumstantially material or tends to support or give credit to the witnesses with respect to the main fact, or to discredit a witness, it is sufficient to constitute the basis of the charge.

Appeal from Union Circuit Court; *C. W. Smith,* Judge; reversed.

*Geo. M. LeCroy,* for appellant.

1. The materiality of the evidence on which perjury is assigned, must be established by the evidence, and can not be left to presumption or influence.    32 Ark. 197; 32 Iowa 403; 99 Ark. 631; 64 *Id.* 474; 86 *Id.* 525, etc.    The alleged false testimony was not material.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. The court left it to the jury to say whether the testimony was material or not.    88 Ark. 115-118.

2.   The State did show that the evidence was material, and that appellant swore falsely.  53 Ark. 95; Cyc. (Perjury), p. 1419, note 5, 657; Kirby's Digest, § 1968; 110 Ark. 549, 553.

McCULLOCH, C. J.   This is an appeal from a judgment convicting the defendant, Gordy Harris, of the crime of perjury.   The substance of the charge set forth in the indictment is that in a certain criminal case on trial in the circuit court of Union County, wherein one Hez McLemore was being tried upon the charge of grand larceny in stealing a cow, the property of C. H. Murphy, the defendant herein was sworn as a witness, and testified that he had sold one Cage McLemore ten or eleven head of cattle and no more, whereas in truth, and in fact he had sold to Cage McLemore 20 or 21 head of cattle.   It is alleged in the indictment that the said testimony was false, and that it was material to the issue presented in that trial.

There are numerous assignments of error, but we content ourselves with the discussion of the sole question whether or not the alleged false testimony was material to the issue in the trial in which it was given, for we have reached the conclusion that a decision of that question determines the case.

The testimony shows the following state of the record in the case of *State* v. *Hez McLemore,* in which defendant's alleged false testimony was given: Hez McLemore was accused of stealing a certain cow, described as a cow with a crumpled horn and branded with the letter "M" on the left hip, which said cow was alleged to have been the property of C. H. Murphy.   Murphy and Cage McLemore, the brother of Hez, had been engaged in the cattle business and had purchased several hundred head of cattle with money furnished by Murphy.   The agreement between them was that Murphy should furnish the money, and Cage McLemore should buy the cattle and put them in the range, and that when sold, there should be a certain division of the profits. The proof shows that there were as many as 245 head of cattle in the range at one time, but

when they were finally gotten up there were 83 of them missing. There was subsequently another contract entered into between those parties whereby the legal title of Cage McLemore passed to Murphy, and he became the sole owner of the cattle. The cow with the crumpled horn was, according to the proof adduced by the State in that case, one of the number purchased by Cage McLemore for Murphy, and was one of the 83 missing cattle. There was an improvised slaughter pen concealed in a thicket near Hez McLemore's house, and the crumpled horns of this cow were found at that place. The theory of the State was that all of the missing cattle were stolen from the range by Hez McLemore and were butchered at the concealed slaughter pen in the thicket near his house. The defendant, Gordy Harris, was also indicted for participation in the offense. Defendant is a brother-in-law of the two McLemores, and in the trial of Hez he was introduced as a witness in the latter's behalf. He testified that he bought from one Sandy Simmons a cow with a crumpled horn and butchered it himself at the concealed slaughter pen in question, and that the horns found by the State's witnesses at the pen are those that were taken from the Sandy Simmons cow. Hez McLemore was convicted in that trial, but on appeal to this court the judgment of conviction was reversed on account of two errors of the court, one was the giving of an instruction, telling the jury in substance that they could convict the defendant in that case if they found that he had stolen *any* cow, the property of Murphy, within three years before the finding of the indictment. *McLemore* v. *State,* 111 Ark. 457.

The defendant Harris testified in the trial, in addition to that part of his testimony already referred to, that he and Hez McLemore had been buying cattle together and butchering the same and peddling the meat at Felsenthal, Arkansas. He testified that there had been bought 44 head of cattle, some of which belonged to him individually, and the remainder to him and Hez in partnership and that out of that number they had butchered 15 or 18. His statement was that he had butchered 10 or 12 of his

individual cattle, and that 5 or 6 of the partnership cattle had also been butchered.

The testimony which is now alleged to have been false was brought out on cross-examination. He was asked the question whether or not he had sold cattle to Cage McLemore for Murphy, and he replied that he had sold 10 or 11. There was an effort during his cross-examination to show by the checks which had been given to him by Cage McLemore, that he had been paid for 21 head of cattle. The testimony in the present case shows conclusively that the various checks were given to the defendant by Cage McLemore for sums aggregating the price of 21 head of cattle, but the defendant satisfactorily showed by the testimony of himself and other witnesses that two of the checks did not represent sales of cattle to McLemore, but did represent money which McLemore had borrowed from him to pay for two head of cattle bought from certain other parties, one Sinclair and one Taylor. He showed that Cage McLemore bought a cow from Sinclair and did not have the money to pay for it at the time, and that he (defendant) furnished the money, and later Cage McLemore gave him one of the checks in question to return the sum of money so advanced, twelve or thirteen dollars. One of the other checks was represented by the price of a cow which defendant bought from Taylor for McLemore and paid for it, and McLemore gave him a check to reimburse him for the amount so paid. So it may be said that the undisputed testimony in this case established the fact that the defendant sold to Cage McLemore 19 head of cattle, and that he testified in the former trial that he only sold 10 or 11 head of cattle to McLemore. He undertakes now to explain by showing that the additional 8 head of cattle were partnership property, and that when he spoke of the sale of the 10 or 11 head of cattle sold to McLemore he meant his individual cattle, and did not take into account the 8 head of partnership cattle. The whole of his testimony in the former trial was reproduced before the jury in the trial of this case, and, notwithstanding the attempted explanation, his testimony was open to the con-

struction that he had withheld the fact of the sale of the additional number of cattle, and had falsely testified that he only sold 10 or 11 head to McLemore.

(1)    Now, the question is whether or not this testimony was material in the investigation of the charge against Hez McLemore.  We are of the opinion that it was not material, and that it can not, for that reason, be made the basis of the charge of perjury.  The inquiry in that case was whether or not Hez McLemore stole the cow with the crumpled horn, alleged to belong to Murphy, and the substance of defendant's testimony was that that cow did not belong to Murphy, or at least that the cow which had the crumpled horn found at the concealed slaughter pen, was the one that he (defendant) bought from Sandy Simmons and slaughtered at that place.  It was entirely proper and material to cross-examine defendant as to how many cattle he had, what disposition he had made of them, and how many had been killed at the slaughter pen; but we are entirely unable to discover what materiality there was in showing how many he sold to Cage McLemore.  He testified in that trial that he had purchased 44 head of cattle; that 15 or 18 of them had been slaughtered, and 10 or 11 had been sold to Cage McLemore.  He was not asked to account for the balance of the cattle, and it was not shown either in that case or this, what became of those that were not so disposed of.  In the former case the prosecuting attorney asked the defendant whether he had sold cattle to anybody else except Cage McLemore, and he replied that he had not sold to any one.  But the question was not asked him what became of the remainder of the 44 head of cattle, and he did not state whether they were still on hand, or had died, or strayed away, or what had become of them.  This discrepancy of 8 head of cattle, in accounting for the number sold to Cage McLemore, could not, as it appears to us, have had any bearing upon the issues in that case, or even upon the question of the credibility of the witness himself.

(2)    We adhere to the rule often announced by this court that in perjury cases it is not necessary that the

false testimony should tend directly to prove the particular issue in the trial in which it is given, but if it is circumstantially material or tends to support or give credit to the witnesses with respect to the main fact, or to discredit a witness, it is sufficient to constitute the basis of the charge.  *Robertson* v. *State,* 54 Ark. 604; *Scott* v. *State,* 77 Ark. 455; *Lewis* v. *State,* 78 Ark. 567; *Smith* v. *State,* 91 Ark. 200.  But, in any event, the materiality of the testimony must be shown, and as an illustration of that rule, the decision of this court in *Marvin* v. *State,* 53 Ark. 395, may be examined with profit.  According to the truth of the matter, as shown in the testimony adduced in the trial of the present case, 37 of the 44 head of cattle bought by defendant were accounted for; whereas, according to the false testimony adduced in the other trial, only 29 were accounted for; but, as before stated, we are unable to see how the difference of 8 head of cattle could have been material.  With the remainder of the cattle unaccounted for, or any attempt to account for them, this discrepancy could not have even affected the credibility of defendant as a witness in the particular inquiry concerning the question whether or not Hez McLemore had stolen the cow with the crumpled horn.

The case has been fully developed by the State, so far as concerns all matters affecting the materiality of the alleged false testimony, and no useful purpose would be served by remanding the case for a new trial.  The judgment is therefore reversed and the cause dismissd.