## GORDON v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 4, 1925.)

No. 6783.

1. **Criminal law** ⏎1090(5)—**Motion to quash indictment, heard on affidavits, not reviewable, in absence of bill of exceptions.**

Denial of motion to quash indictment, heard on affidavits, is not reviewable, in absence of duly authenticated bill of exceptions containing such affidavits.

2. **Criminal law** ⏎1054(3)—**Circuit Court of Appeals is not required to review denial of motion for directed verdict, in absence of exception.**

Circuit Court of Appeals is not required to review denial of motion for directed verdict, in absence of exception to that ruling.

3. **Bankruptcy** ⏎495 — **Perjury** ⏎33(1) — **Evidence held to sustain conviction for failing to list and declare assets, and for perjury before referee in bankruptcy.**

Evidence held, to sustain conviction for failing to list and declare assets in schedules in bankruptcy, and for perjury in testimony before referee in bankruptcy.

4. **Perjury** ⏎34(1)—**Clear and direct testimony of one or more witnesses is sufficient to sustain conviction for perjury.**

Clear and direct testimony of one or more witnesses, or testimony of one witness and convincing corroborative circumstances, or indubitable facts absolutely incompatible with truth of testimony charged to be false, is sufficient to sustain conviction for perjury.

In Error to the District Court of the United States for the District of North Dakota; Andrew Miller, Judge.

Abraham Gordon, otherwise known as Abe Gordon, was convicted of fraudulently failing to list and declare certain assets in his schedules of his assets in bankruptcy, and for fraudulently concealing such assets from his trustee and of perjury in his testimony before referee, and he brings error. Affirmed.

Francis Murphy, of Fargo, N. D., for plaintiff in error.

Seth W. Richardson, U. S. Atty., of Fargo, N. D. (William C. Green, Asst. U. S. Atty., of Fargo, N. D., on the brief), for the United States.

Before SANBORN, Circuit Judge, and POLLOCK and SYMES, District Judges.

SANBORN, Circuit Judge. The grand jury in the court below on January 29, 1923, found an indictment in two counts against the defendant Abraham Gordon, a bankrupt, in the first count for fraudulently failing to list and declare in his schedules of his assets in bankruptcy and for fraudulently concealing from the trustee of his estate in bankruptcy three certificates of deposit aggregating and worth $2,500, issued to him by the Union National Bank of Minot, N. D., and in the second count for committing the crime of perjury in his testimony before the referee in bankruptcy relative to these certificates. He was tried and convicted on each of these counts, and sentenced to imprisonment in the penitentiary at Leavenworth for one year and six months. He sued out this writ of error, and his counsel make two complaints of the proceedings at his trial: First, that the court below refused to grant his motion, based on affidavits, to quash the second count of the indictment on the ground that there was no competent testimony or evidence before the grand jury that found the indictment of the commission of the offense charged in that count; and, second, that the trial court denied the motion of the defendant at the close of the trial to instruct the jury to return a verdict in his favor.

[1, 2] The denial of the motion to quash, however, is not reviewable in this court because that motion was founded on affidavits and those affidavits are not embodied in a bill of exceptions authenticated by the judge who denied the motion. Chicago Great Western Ry. Co. v. Le Valley, 233 F. 384, 387, 147 C. C. A. 320; Hildreth v. Grandin, 97 F. 870, 872, 38 C. C. A. 516; Ingram v. United States, 5 F.(2d) 940 (8th C. C. A., opinion filed April 17, 1925). Nor is this court required to review the denial of the motion for a directed verdict, for no exception was taken to that ruling. Southern Pacific Co. v. Arnett, 126 F. 75, 81, 61 C. C. A. 131.

[3] We have nevertheless carefully read the evidence at the trial and the briefs of counsel, and these facts are admitted or conclusively proved: On December 2, 1921, the defendant Gordon was doing business under the name of the Gordon Clothing Company at Minot, N. D., and he kept his account with the Union National Bank of that city in that name. On that day he borrowed of that bank $2,500, and gave to it therefor his five promissory notes, for $500 each, secured their payment by an assignment of his rents, caused this $2,500 to be credited to himself under the name Gordon Clothing Company by the bank, drew his check as Gordon Clothing Company on the bank for $2,500, bought with that check two certificates of deposit of that bank for $1,000 each, and one for $500, running to himself under the name A. Gor-

don, indorsed them, and delivered them to the bank. Mr. Persons, the president of the bank, testified that he made out the slip for the credit to him as the Gordon Clothing Company of the $2,500 borrowed; that 10 or 15 minutes thereafter he returned with the three certificates of deposit which he had indorsed, handed them to him, and said, "You can put these away with my other collateral; I want the bank to be safe all the time, and I don't intend to use the money right now;" and that he (Mr. Persons) understood that he was taking these certificates as collateral security for Gordon's notes for the $2,500 and for other amounts.

On January 16, 1922, an involuntary petition in bankruptcy was filed against Mr. Gordon, and on February 8, 1922, he was adjudicated a bankrupt. He did not list or describe the three certificates of deposit or their value in his schedules of his assets in the bankruptcy proceedings. He was called and sworn to testify to the truth in his examination before the referee in bankruptcy at the first meeting of his creditors on March 2, 1922, and at a continuation of that examination on April 6, 1922, he testified that the three certificates of deposit which he obtained from the bank and handed to Mr. Persons on December 2, 1921, were not his, but were his wife's; that some one in the bank made a mistake in making them out in his name; that his wife gave him the cash for them at just that time; that he went to his wife and got $2,500; that he gave that check to his wife; that he got credit to his account and drew it out; that he drew check on the bank; that she gave it to him as cash; that she said she did not need it, and he might just as well take it; that he owed the bank, and took the certificate of deposit, and left it in the bank, because his wife was going away for medical attention; that he did not turn over the certificates of deposit; that he gave his wife check for cash, and she gave him cash; that he signed the check; that he did not remember whether he gave the bank a check, too; that he paid bills with the cash she gave him; that he drew only one check on December 2, 1921, and that was to his wife, and he got the currency from her; that he gave her $2,000 in September, which he got from Kopald and Gordon, and gave her for her operation, and she still had it in December, because she had not used it.

"Q. Didn't you just tell us that you borrowed $2,500 from your wife in December? A. She gave it to me, so I could take certificates of deposit and put it away for her.

"Q. You mean you used it to buy C. D.'s,

this currency that you got from your wife? A. I don't just exactly remember whether I used the check or currency.

"Q. Did you issue any checks on December 1st or 2d for $2,500? A. I don't think I issued this check; I drew check right on the bank here.

"Q. And that check? A. I am sure I didn't draw a check.

"Q. Drew it at the bank at the same time you borrowed the money? A. I did not.

"Q. You went home first? A. Sure.

"Q. What did you go home for? A. Well, because I wanted to get the wife.

"Q. Why did you borrow it from the bank, if you had money—if your wife had money? A. I didn't know she had money. That was given her for medical attention.

"Q. In the first place, you didn't know she had it? A. But I didn't know whether she used it."

It was upon this testimony of Mr. Gordon before the referee that the claim of the government that he committed perjury was based. At the trial below he testified in his own behalf that the three certificates of deposit were his wife's and not his; that on December 2, 1921, after he had borrowed the $2,500, given his notes for it, and received credit for it in his account with the bank, he went home to his wife and got $2,000 in cash, which she had in the house, took it to Mr. Balerud, the assistant cashier of the bank, drew his check on the bank for $2,500, gave it to Balerud, and told him he wanted certificates of deposit for that amount, told Mr. Persons that he just got $2,000 from his wife, which he was going to use for meeting his obligations, and that he would have certificates of deposit for the $2,500 he borrowed of the bank, and leave it with Mr. Persons; and that he told his wife he put away $2,500 for her. He again testified that the certificates were his wife's, and that that was the reason he did not list them in the schedules of his assets. He also testified that he gave his wife the $2,000 she had in the house in September, 1921. On cross-examination he testified that, just after December 2, 1921, he paid about $1,000 or $1,200 taxes by check; that he did not deposit in the bank the $2,000 he obtained from his wife at the time he received it, but deposited it in different amounts subsequently, when he needed credit in the bank to meet his checks; that he never held out currency in that way prior to December 2, 1921, but people were suing him, and he kept the cash, and put it in the bank as his checks came in. He further testified that, when he gave the certificates of

deposit to Mr. Persons, he told him the certificates were his wife's; that he got the money from his wife, and was going to use that money to pay his obligations, and was not going to use the money he borrowed from the bank, but that he would put that money in certificates of deposit for her interest; and that when Mr. Balerud handed him the certificates he told him they should have been made out to his wife, and added, "Never mind, it is all right; I will just have to indorse it and put it in the bank anyhow." He testified that his testimony before the referee that he gave his wife a check for the money he obtained from her was not the truth, and that he never gave her such a check. He testified that he never testified before the referee to many statements which the stenographer who took his testimony testified from her transcript of the testimony that he had testified to.

Mr. Persons, the president of the bank, testified that, at the time Mr. Gordon brought the certificates of deposit to him and left them with him, he did not say anything to him as to their belonging to any one, but himself, and that he said nothing about their being in his wife's name; that the certificates remained in the bank; that one day Mr. Gordon wanted to cancel them, but Mr. Persons told him he could not do that without canceling the notes; that this conversation was about the time Mr. Gordon became bankrupt; that the first time Mr. Gordon claimed the certificates were his wife's was early in the spring of 1922. Mr. Balerud, the assistant cashier of the bank, testified that he drew the three certificates and delivered them to Mr. Gordon; that the latter gave him a check of the Gordon Clothing Company on the bank to pay for them; and that he said nothing to him about the certificates belonging to his wife.

[4] Counsel for the defendant argues that the court fell into an error in its denial of his motion for a directed verdict because (1) the rule is that the testimony of two witnesses, or of one witness and corroborating circumstances, is indispensable to sustain a conviction for perjury; and (2) that the evidence to sustain such a conviction must be incompatible with the innocence of the defendant, and incapable of explanation on any other reasonable hypothesis. Conceding that there was a time when a rule prevailed in many courts to the effect that the testimony of two witnesses, or of one witness and corroborating circumstances, was essential to sustain a conviction for perjury, that

5 F.(2d)—60

rule has long since been relaxed, and such testimony is no longer essential to warrant a verdict of perjury. Clear and direct testimony of one or more witnesses, or the testimony of one witness and convincing corroborating circumstances, or indubitable facts absolutely incompatible with the truth of the testimony charged to be false, may be ample to sustain a verdict for perjury. United States v. Wood, 39 U. S. (14 Pet.) 428, 437, 438, 439, 440, 441, 442, 10 L. Ed. 527; Hashagen v. United States, 169 F. 396, 399, 94 C. C. A. 618; Kahn v. United States, 214 F. 54, 56, 130 C. C. A. 494. And the testimony of Mr. Persons and Mr. Balerud as to the persons by whom, to whom, and for whom the check for $2,500 and the certificates of deposit were issued, and the defendant's many contradictions of his own testimony, and the check of $2,500 and the certificates leave no doubt that the substantial evidence in this case is irreconcilable with the innocence of the defendant, and incapable of explanation on any other rational theory than that of his guilt.

The judgment below must therefore be, and it is, affirmed.