## LUCIEN B. WRIGHT v. STATE.

No. A-4826.   Opinion Filed June 6, 1925.
(236 Pac. 633.)

(Syllabus.)

1. **Perjury—Not Necessary that Matter Sworn to is Directly and Immediately Material.** In order to constitute perjury, it is not necessary that the matter sworn to should be directly and immediately material. It is sufficient if it is so connected with the matter at issue at to reasonably tend to prove or disprove some fact that is material by giving weight or probability to or detracting from the testimony of a witness to such material fact.

2. **Same—Degree of Materiality Disregarded.** Upon a trial for perjury, the degree of the materiality of the testimony upon which perjury is based is of no importance. Any false testimony given by a witness which detracts from or adds weight and force to the testimony of any witness upon matters that are directly material thereby becomes material itself and constitutes perjury.

3. **Same—Direct Testimony of One Witness and Corroborating Circumstances Sufficient Proof of Perjury.** To support a conviction for perjury, it is not essential that there be two witnesses to the falsity of accused's testimony.. It is sufficient if there be direct testimony of one witness and corroborating circumstances, and taken as a whole of such conclusive character as to exclude every other reasonable hypothesis, except that of defendant's guilt.

4. **Same—Corroborating Evidence Held Insufficient to Support Conviction.** For corroborating evidence held insufficient, see opinion.

Appeal from District Court, Oklahoma County; O. L. Price, Judge.

Lucien B. Wright was convicted of perjury, and he appeals. Reversed and remanded.

C. E. McPherren, L. O. Lytle and M. M. Thomas, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

EDWARDS, J.   The plaintiff in error will be referred to as defendant, as in the court below.

Defendant was informed against in the district court of Oklahoma county for perjury alleged to have been committed by the giving of false testimony in a prosecution of Charles A. Elkins in case No. A-5273, wherein the said Elkins was tried for the murder of one J. H. Ferguson, and in which trial the defendant was a witness for the defense.   He was convicted and sentenced to serve a term of 10 years in the state penitentiary.   The material charging part of the information setting out the offense is:

"* * * Did then and there in said case knowingly, willfully, corruptly, falsely, and feloniously testify, depose, and say in substance and effect that he was not in the room at the time the defendant Elkins fired the shot that killed the deceased J. H. Ferguson, and that the witness Rosa Walker was not in the room at the time the defendant Elkins fired the shot, and could not have been an eyewitness to the firing of said shot. * * *"

Then follows the allegation that said testimony was material, was false and untrue and corruptly made, etc.

Various errors are assigned and argued, only three of which we think it necessary to consider as follows: First, that the record of the trial in which the alleged false testimony was given is not produced, and there is no sufficient proof that the case was at issue or was legally on trial.   Second, that there is no proof that the evidence alleged as the basis of perjury was material.   Third, there is no sufficient corroboration in proof of the alleged perjury as required by law.

Considering these assignments in the order set out, an examination of the record discloses that there was no production of the record nor any authenticated transcript, nor any waiver of such record, nor was there sufficient parol proof on this point.   The journal was not offered

in evidence showing the court to have been in session, nor is any proof made that the defendant in the case tried was present or had pleaded to the information, or that a jury had been called and impaneled. The charge on which the defendant was tried was of perjury in a judicial proceeding, and the essential facts to establish the proceeding to have been in a competent tribunal should have been made.

In McFarland v. State, 12 Okla. Cr. 201, 153 P. 619, this court held:

"In a prosecution for perjury, the proceedings, if judicial, in which the oath was taken must be accurately described in the information, and must be proved substantially as alleged. * * *"

In the case of Heflin v. State, 88 Ga. 151, 14 S. E. 112,, 30 Am. St. Rep. 147, the court said:

" 'The cause and issue wherein the perjury was committed are proved by the record, which should be in the form and with the verification required by the ordinary practice of the court.' 2 Bishop's Crim. Proc. § 933b. The authorities, early and late, on this question seem to be of uniform tenor. 2 Starkie on Evidence, 859; Bull. N. P. 243; 2 Chitty's Crim. Law, 312a; 2 Archbold's Crim. Pr. & Pl. *602; 3 Russell on Crimes, *95; 2 Roscoe's Crim. Ev. *843; 3 Jacob's Fisher's Digest, 3546 et seq.; 2 Wharton's Crim. Law, § 1326; 3 Greenl. Ev. § 197; 2 Taylor's Ev. § 1668. This requirement as to the medium of proof corresponds with the general rule of law, that the proceedings of a court of record are known only by means of the record itself. Collins v. Bullard, 57 Ga. 333; Rutherford v. Crawford, 53 Ga. 139; James v. Kerby, 29 Ga. 684. * * *

"The stenographer's evidence was all appropriate to open the way to the introduction of the evidence given by Heflin on the trial of Eddleman, and for that purpose it was all admissible; but in order to show the actual existence of the case of State v. Eddleman as a judicial proceeding in the superior court of Fulton county, and its identity with the case described in the bill of indictment,

it was necessary to go further and prove by the record an indictment against Eddleman (for he could not have been legally tried without an indictment), and that there was an issue raised upon that indictment, and what that issue was. The bill of indictment in the present case alleges that there was a plea of not guilty, but no evidence whatever as to the plea was adduced. Consequently, the jury trying Heflin did not know by evidence either that Eddleman was indicted, or upon what issue he was tried. * * *"

This proof by record seems to have been required upon a common-law indictment for perjury. It is the better method of proof of jurisdictional and formal requisites under the Code. But, where there is sufficient parol proof of the authority and regularity of the judicial proceeding, it will be sufficient. Section 11, Cyc. 1449 (c).

Upon the second assignment, i. e., that the evidence is not shown to be material, the record discloses that there was considerable confusion and a conflict between the evidence of the defendant Wright and the witness Mrs. Rosa Walker. They were the only persons immediately present at the time of the killing of Ferguson by Elkins. The testimony of Wright was in substance that he was not in the room where the shooting took place, but in the hall outside the room. In one instance he testified that he was in the hall and the witness Rosa Walker probably three steps behind him. In another instance he testified he was in the hall and she was immediately behind him, and in another instance that he was in the hall and she was about three feet behind him. He does not testify that the witness Rosa Walker could not have seen the firing of the fatal shot from the position where his testimony placed her. The defendant contends that, according to a diagram introduced in evidence in the Elkins Case, she could have seen the shooting from the spot where defendant's evidence placed her. The inference to be gathered from his evidence, however, is that she could not have seen the shooting. The witness Rosa Walker testified in one instance that

she was in the room where the shot was fired just a short distance from the opening of the door. In another instance she testified that she was at the "shut of the door." In another instance she testified: "I was in the doorway. You might say in the room." This testimony of the defendant, Wright, placing her outside the room, may not have been material to the immediate issue, that is, the killing of Ferguson by Elkins and the circumstances thereof, yet it was material, in that it contradicted and affected the testimony of the witness Rosa Walker. That is, it tended to discredit her testimony by showing or tending to show that she was not in a position to have seen the shooting.

It is well settled that in order to constitute perjury the matter sworn to need not be directly and immediately material. It is sufficient if it is so connected with the matter at issue as to have legitimate tendency to prove or disprove some fact that is material by giving weight or probability to, or detracting from, testimony of the witness to such material fact. That is to say, the degree of the materiality is of no special importance. Harris v. State, 119 Ark. 408, 177 S. W. 1144; McVicker v. State, 52 Tex. Cr. R. 508, 107 S. W. 834; State v. Greenberg, 92 Conn. 657, 103 A. 897; U. S. v. Landsberg (C. C.) 23 F. 585; Herndon v. State, 72 Fla. 108, 72 So. 833; State v. Smith, 126 La. 135, 52 So. 244; People v. Macard, 109 Mich. 623, 67 N. W. 968; State v. Moran, 216 Mo. 550, 115 S. W. 1126; Ex parte Metcalf, 8 Okla. Cr. 605, 129 P. 675, 44 L. R. A. (N. S.) 513; Miller v. State, 9 Okla. Cr. 196, 131 P. 181; Coleman v. State, 6 Okla. Cr. 252, 118 P. 594.

The evidence of the defendant placing the witness Rosa Walker outside the room where the shot was fired tended to contradict and discredit her testimony, and thereby weaken and detract from its weight, and, though not material to the immediate issue, it was nevertheless material within the meaning of the law.

Considering the third assignment, that is, insufficiency of the corroboration, the evidence of the witness Rosa Walker was in substance that at the time of the killing there was in the room Ferguson, the deceased, Elkins, who fired the fatal shot, the witness Rosa Walker, and the defendant in this case, Wright. Her testimony on this point is as follows:

"Q. Which room? A. On the east side of the house.

"Q. The room that you were occupying? A. Yes, sir.

"Q. Where was Mr. Elkins when he fired the shot? A. Why he was standing. The dresser sets back a little bit south and west of the door, and he was standing almost in front of the dresser. It would be—say southwest of the door, the entrance.

"Q. Is that southeast? A. Well the dresser sets southwest in the southwest corner of the room, Mr. Powell, and he was standing just a little east of the dresser, which made him almost southwest of the door.

"Q. And where was Ferguson? A. Mr. Ferguson was standing in front of me.

"Q. Where was Judge Wright? A. He was standing at the right of me.

"Q. Where would that put him in the room—standing to the right of you? A. That would put him on the west side of the room.

"Q. Now, is that the position that the occupants of that room occupied at the time the shot was fired? A. Yes, sir.

"Q. And which direction was Elkins from him—from Ferguson? A. He was just a little south of him—a little south of him.

"Q. A little south of him? A. Yes, sir; south of him.

"Q. And you was where? A. Behind Mr. Ferguson.

"Q. Behind Mr. Ferguson. Now, which direction would it be, then, that you occupied in the room? A. North.

"Q. North? A. Yes, sir.

"Q. Now, where was Lucien B. Wright? A. He was on the west side of me.

"Q. On the west side of you? A. Yes, sir; he was standing at the right of me. That would put him on the left side, just between the dresser and the door.

"Q. Between the dresser and the door? A. Yes, sir."

There were various discrepancies in the cross-examination and in her further direct examination. As before stated, the testimony of the defendant, Wright, was in substance that he was in the hall, and not in a position to witness the shooting.

Under the quantitative rule of evidence in this state in a prosecution for perjury, it is necessary that the falsity of defendant's evidence be established by the testimony of more than one witness or by the testimony of one witness, corroborated by circumstances directly and positively sworn to, and of such conclusive character as to exclude every other reasonable hypothesis, except that of the defendant's guilt. Wharton's Crim. Law (9th Ed.) § 1319; Hashagen v. U. S., 169 F. 396, 94 C. C. A. 618; Kelley v. State, 51 Tex. Cr. R. 507, 103 S. W. 190; State v. Miller, 80 Wash. 75, 141 P. 293; State v. Young, 153 Iowa, 4, 132 N. W. 813, Ann. Cas. 1913E, 70; Ex parte Metcalf, supra; Shoemaker v. State, 29 Okla. Cr. 184, 233 P. 489.

Here Rosa Walker is the only witness directly contradicting the evidence of the defendant Wright. The state undertook to corroborate her testimony by the testimony of Margaret Reeves and Kenneth Braughton. These two witnesses were asleep in another room in the house in which the shooting took place. The witness Margaret Reeves testified that she did not hear the shot at all, and that Mrs. Walker came to the room, rapped, and called her. She got up and went into the room where the shooting occurred.

The witness Braughton testified that he was in bed asleep and heard a sound like some one slamming the door. That his mother, Rosa Walker, came to the door and rapped. That he got up, put on his trousers, and went in where the shooting occurred. Both these witnesses testify that as they came to the room where the shooting occurred Elkins and Wright were coming out of the room. This is some slight corroboration of the testimony of Rosa Walker that Wright was in the room at the time of the shooting, but it is not of the positive and conclusive character contemplated by law. It does not exclude every other reasonable hypothesis than that the defendant was in the room at the time of the shooting.

The evidence of the witness Rosa Walker is that after the shooting she left the room, went down the hall to another room, rapped on the door, and then returned to the room where the shooting occurred before Margaret Reeves and Kenneth Braughton came out. If the defendant Wright was in the hall, there was more than ample time for him to have gone into the room where the shooting occurred—it could not have been more than two or three or four steps away—and under the circumstances it would have been a natural thing for him to do. The corroborating circumstances relied on are not of such character as to clearly turn the scale and overcome the oath of the defendant and the legal presumption of his innocence. The trial court should have directed a verdict at the close of the state's evidence.

For the reasons assigned, the case is reversed and remanded.

BESSEY, P. J., and DOYLE, J., concur.