THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ISIDOR J. KRESEL, Defendant.*

Court of General Sessions, New York County, October 17, 1931.

*Thomas C. T. Crain, District Attorney* [*James G. Wallace, Assistant District Attorney*, of counsel], for the plaintiff.

*Davis, Polk, Wardwell, Gardiner & Reed* [*John W. Davis* of counsel], for the defendant.

* See, also, 142 Misc. 88.

FRESCHI, J. Perjury is charged against this defendant, resulting from his sworn testimony as a witness for the defense at the trial before Judge Donnellan and a jury wherein he made a statement alleged to be inconsistent with one he had previously sworn to before the grand jury in the case of People v. Bernard K. Marcus, Saul Singer and Henry Pollack, with whom this defendant and one Herbert Singer were jointly indicted as principals for aiding and abetting the other three defendants in the willful abstracting and misapplying of the funds of the Municipal Safe Deposit Company. Because of an order of severance, this defendant was not tried with his codefendants in the latter case. The jury convicted Marcus and the two Singers and disagreed as to Pollack. The crime charged in that case constituted a violation of section 305 of the Penal Law, in that the defendants there, Bernard K. Marcus, Saul Singer and Henry Pollack, abstracted and willfully misapplied, *as directors* of the Municipal Safe Deposit Company, the sum of $2,009,518.45, and unlawfully paid the same to the Bolivar Development Corporation to enable it to purchase and hold for its own use twenty-five shares of the Premier Development Corporation. The specific assignment of perjury against the defendant here is the affirmation by him contradictory of what he had previously stated on the same subject before the January, 1931, grand jury with respect to his participation in and knowledge of several of the happenings that led up to the misapplication of the funds of the Municipal Safe Deposit Company as aforesaid.

I have made an examination of so much of the trial record in the Marcus-Singer-Pollack case as I regard pertinent and material to this motion; and it appears therefrom that the defendants Bernard K. Marcus, Saul Singer, Herbert Singer and Henry W. Pollack urged as a defense that the reorganization of certain companies through certain financing and transferring agreements, and the application of certain funds were effected upon the advice of this defendant as their counsel. They testified, as witnesses on their own behalf, as to their knowledge of the facts and circumstances leading up to the paying out of funds of the Municipal Safe Deposit Company; and they called this defendant Kresel as a corroborating witness. Some of the defendants in that case told of the conferences and meetings held in formulating and carrying out the so-called Bolivar plan, at one of which they claim the defendant Kresel was present; and they alluded to his participation in the matter. In fact, this defendant admitted his presence at the conference of January 11, 1930 (pp. 6850–6865). And the minutes of the trial show that he was interrogated by one of the attorneys for the defense therein, concerning, among other

matters, defendants' Exhibit 4-S in that trial (p. 6847 *et seq.*), which is the schedule used by said parties in the appreciation of the assets of various financial companies that figure and are named in the transactions complained of. This, the prosecution claimed, was an arbitrary increase of the book value of securities and was one of the steps that led up to the misapplication of these funds. It further appears from his testimony that this defendant admitted that the altered figures in such schedule, increasing the values of the various corporate stocks mentioned in that exhibit, were in his handwriting. Furthermore, he admitted that the written interlineations were in his own hand in defendants' Exhibit 6-Z (pp. 6853-6962 *et seq.*), which purports to be paragraph " 5 " of the preliminary draft of an agreement whereby the Bolivar Development Corporation obligated itself to pay to the Municipal Safe Deposit Company a sum of money as a " difference " in the event of a certain contingency with respect to the repurchase of the twenty-five shares of stock of the Premier Development Company by the Municipal Safe Deposit Company. Exhibit 5-B, entitled " Lip," was admittedly written by this defendant (p. 6809, testimony) relating to a syndicate and the City Financial Corporation.

Counsel for the defense in that case, endeavoring to procure some direct benefit in favor of their parties, sought to and did use this defendant as their witness respecting some of the matters in controversy, relating and relevant to° some phases of the main transaction at issue, with which it was clearly shown this defendant was connected and in which he had a direct and immediate interest. The degree of that interest is unimportant here. Certain it is, though, that his testimony affected the question to be decided and was given to aid in procuring a verdict for that side, thus leading, perforce, to the conclusion that the witness Kresel was, to all intents and purposes, a material witness, notwithstanding the charge of Judge Donnellan to the effect that the advice of counsel had no relevancy to the case (p. 8626) and in and of itself did not constitute a valid defense for the misconduct of the directors, whose " wilfulness " in the use of the funds was submitted as a question of fact. It is well to quote the exact words of that part of the charge: " One of the questions involved," said the court, " in this case is how far, if at all, the advice of a lawyer affects the liability of these defendants " (p. 8621). (See, also, pp. 8571, 8574 and 8578.) Such charge by the court cannot for purposes of a subsequent perjury prosecution divest this witness of his character as a material witness, nor change his purpose as such witness so far as the consequences of his giving testimony is conerned, especially if it can be shown that the witness' testimony

is relevant and might influence the decision of the case wherein he testified. This defendant was then cross-examined on this and other subjects and more particularly with respect to his testimony before the grand jury that returned the indictment in the original case. Mr. Steuer, the trial prosecutor, having in mind, no doubt, Kresel's testimony at pages 6855 and 6856 that, at the conference of January eleventh, when he was still a director of the Bank of United States, he had not described the plan as illegal, asked the witness Kresel whether he, *as a fact*, had not made the following statement to the grand jury, regarding the main transaction in the case wherein the funds were used as stated: " Now I come back to it. I had nothing to do and did not know of the course that this transaction took. I do not understand why it should have been necessary to have this devious way of having these two corporations. I have talked about that. One explanation given to me was that there was a tax problem involved, that if one of these corporations for $4,800,000 * * * of property which was then sold for $8,000,000 * * * realize the difference as a profit, it would be subject to a tax, and they up there were advised by outside tax people, so I understand, * * * I am not vouching for this * * * that it was wiser to pass it through another corporation. *But the very fact that it was passed through that way indicates there was something suspiciously wrong about it. I would have nothing to do with that sort of transaction. It is unfortunate that the man who was in my employ was the man who had charge of it.*" (See People v. Marcus, trial minutes, page 7112.) The matter italicized was flatly denied by this defendant (p. 7113) and is the only part of the foregoing statement used, for some reason best known to the learned counsel for the People, as the basis for the perjury indictment in the instant case. This line of inquiry was designed to impeach Kresel's reputation for truth and impugn his credibility tending to show him unworthy of belief (p. 8620). This becomes relevant testimony and substantive evidence, affecting contradictory declarations proven, even though, as it is claimed by the defendant, it in no wise was a part of the main transaction. The truth or falsity of the answer might fairly have influenced the jury in their determination of the whole case. Here, it might be well to emphasize that the assignment of perjury is the *act* of giving alleged false testimony in the Marcus-Singer-Pollack trial contradictory to what the witness Kresel had previously stated on the same subject before a grand jury. Such is the plain meaning of this indictment. If the objective of the witness was to establish his knowledge of the facts appearing in the question or whether or not he had given his approval to the transaction about which

he was being interrogated, one cannot avoid concluding that the answer deals with a fact and is not a mere opinion or belief. Under the indictment, therefore, an allegation of a willful contradiction of material matter of fact appears inconsistent with defendant's previous testimony. And, aside from any purpose of this defendant, the prosecutor was permitted by the trial judge to ask Kresel whether he had not previously made the statement in question for the purpose of affecting his credibility. Willfully false testimony as a test of credibility may form the basis of perjury. Credibility is a material issue. (*Wood* v. *People*, 59 N. Y. 117.) At page 123 the court in that case wrote: " It is not necessary that the false statements should tend directly to prove the issue in order to sustain an indictment. If the matter falsely sworn to is circumstantially material or tends to support and give credit to the witness in respect to the main fact, it is perjury. (*Comm.* v. *Pollard*, 12 Mass. 220; 3 Greenl. Ev. § 197; Roscoe on Cr. Ev. 759.)"

The doctrine is laid down in the case of *People* v. *Courtney* (94 N. Y. 490) that perjury may be assigned upon false testimony going to the credit of a witness who has given material evidence on the trial. ANDREWS, J., speaking for the court, says (at p. 494): " The only remaining question worthy of notice arises on the motion of the prisoner's counsel on the trial that the court should direct an acquittal on the ground that the matters on which the perjury was assigned were immaterial. It is true that the false testimony did not bear directly upon the main issue on the trial for forgery, but only upon the credit of the witness who gave material evidence on the merits. Evidence going to the credit of a witness who has given material evidence is relevant, because it helps the jury in determining the main issue. The recent cases sustain the view that perjury may be assigned upon false testimony, going to the credit of a witness. (*Reg.* v. *Glover*, 9 Cox's Crim. Cas. 501; *Reg.* v. *Lavey*, 3 C. & K. 26; Arch. Crim. Pr. 817.) False swearing in respect to such matter is not distinguishable in respect to moral turpitude from false swearing upon the merits, and, we think, there is no just reason for refusing to treat false swearing as perjury whenever the testimony is relevant to the case, although it may not directly bear upon the issue to be found."

In 21 Ruling Case Law, page 259, the rule is stated as follows: " It may be laid down as a general rule that any testimony which is relevant in the trial of a case, whether to the main issue or some collateral issue, is so far material as to render a witness who knowingly and wilfully falsifies in giving it guilty of perjury. It is but common knowledge that it frequently occurs in the trial of causes that inquiries are made of witnesses touching matters which do

not directly concern the commission of the acts which constitute the offense, yet such inquiries and answers may be material and highly important to the end that the triers of the fact may properly and intelligently weigh the testimony in the cause. If it is so connected with the matter at issue as to have a legitimate tendency to prove or disprove some fact that is material by giving weight or probability to, or detaching from the testimony of a witness thereto, it is sufficient and makes the testimony material. The degree of materiality is of no importance; for, if it tends to prove the matter in hand, it is enough, though it be but circumstantial." (See, also, *State* v. *Rash*, 78 Atl. 405.)

Counsel for this defendant contends that this part of the statement contained in the indictment is nothing more than the mere expression of an opinion and does not constitute a statement of fact in any sense, bearing on the original case against the directors of the safe deposit and other companies. With this view I cannot agree. We must look to the substance of the matter rather than to the form. The familiar epigram of Lord BOWEN that the state of a man's mind is as much a fact as the state of his digestion illustrates the point perfectly.

The familiar principle of the reason and the consequent so well recognized in the fundamental law of logic applies to the contradictory statement. The prosecution claims that this defendant has stated his reason for his relationship to the entire scheme of this financial reorganization, and that the witness Kresel before the grand jury sought to show by this reasoning that he had no necessary connection with it, his apparent object being, at that time, that we must conceive him as not being in any way connected with it. In its intendment and meaning, the statement must be accepted as a direct affirmation of fact. For purposes of this motion, his relation with the transaction, though, is demonstrated not alone by the exhibits bearing defendant's own handwriting but also by much of his testimony at the trial; and here I am bound to hold that the defendant's contradiction *at the trial* had a relevant bearing on the main issue of the Marcus-Singer-Pollack case. It need not be directly and immediately material. It is sufficient if it is so connected with the matter at issue as to reasonably tend to prove or disprove some fact that is material by giving weight or probability to or detracting from the testimony of a witness to such material fact. (*Wright* v. *State*, 236 Pac. 633.) (See, also, *Rose* v. *State*, 127 id. 873, at p. 879.) If the statement made at the trial be true, then the one before the grand jury must be false. The law of contradiction is explicit under these premises. A thing cannot be conceived as *being* and *not being* at the same time.

Certainly, the two statements do not agree with each other and were not designed to establish that they agreed with each other. The aim of the defendant may be reasonably inferred from such sworn statements. The surrounding circumstances are, as a rule, important, and, as in all cases of perjury, the jury must be satisfied of the corrupt intent. (*United States* v. *Wood*, 14 Pet. 430, 441.) It seems to me that there is a question of fact for a jury to determine whether on one or the other occasion the defendant willfully falsely swore to the particular fact charged here.

Assuming that this statement given at the trial amounts to a repudiation by Kresel of his alleged opposing statement of any connection with the original transaction attacked as criminal, it will be necessary to determine, under all the circumstances, what was his motive and intent in making the two alleged opposing declarations under the solemnity of an oath, one of which is charged in this indictment as false. (1 Greenl. Ev. § 259.) The existence of proof of criminal intent, after the court shall have decided the question of law as to the materiality of the statement, is essentially, in this class of cases, a question of fact for a jury. (See *People ex rel. Hegeman* v. *Corrigan*, 195 N. Y. 1.) The truthfulness or willfulness of the statement is not for me to decide on this motion.

The district attorney contends that he is entitled to the benefit of any testimony that Kresel gave at the trial on the merits of the main and collateral issues in support of the facts charged in the indictment, and he further contends that if by reason of this testimony, even on extraneous matters, the credibility of Kresel on the trial is affected one way or the other to the extent that the jury might find in favor of the defendants and against the People, although his testimony before the grand jury was to convince them that he had no part in the case, he must be regarded as a material witness. The prosecution's contention is that he was interested in the result, respecting the matter in controversy and his credibility at the trial was germane. Would he have any benefit from the conviction or acquittal of the offenders on the trial of the merits? Could the jury have found he was interested and, therefore, have disregarded his entire testimony? These questions suggest additional reasons in determining the materiality of the witness' testimony. The remaining questions as to whether conflicting statements were made, whether their falsity and willfulness are established, are not for me to decide. Truly, as has been argued, a person might very honestly and conscientiously swear to a particular fact, from the best of his recollection and belief, and from other circumstances subsequently be convinced that he was wrong — and swear to the reverse, without meaning

to swear falsely either time. This all goes to the required proof of perjury. It is elementary that the burden is with the prosecution to show that the particular specification is false.

It is well settled that the purpose of an inspection of the grand jury minutes is to ascertain whether or not grounds exist for a motion to dismiss an indictment (*People* v. *Dunbar Contracting Co.*, 82 Misc. 174, 178), and in the exercise of my discretion I am not satisfied that on all the papers submitted to me any statutory grounds have been disclosed why this indictment for perjury should not stand; and by an examination of the minutes of the grand jury handed to me after the argument I find that no illegal evidence was received by the grand jury. The evidence was sufficient. The test is stated clearly in *People* v. *Joslin* (129 Misc. 790).

I am constrained to deny this motion.