## Court of Appeals.

*October, 1902.*

## THE PEOPLE v. DANIEL DOODY.

(172 N. Y. 165.)

1. PERJURY.

The rule that prevails in cases of perjury, where one oath is placed against another, that there must be two witnesses to prove the charge, or in case only one witness is produced there must be independent corroborating circumstances, has no application where the proof of the crime is necessarily based upon circumstantial evidence.

2. SAME—DENIAL OF RECOLLECTION.

A witness who swears falsely, wilfully and corruptly to the effect that he does not remember certain material facts involved in the issue on trial, when it is shown by competent proof that he did remember them, is properly convicted of perjury.

3. SAME.

The previous statements and admissions of one on trial for perjury in falsely swearing that he did not remember material facts involved in an issue on trial, by which he accused himself and others of conspiracy and the commission of a crime, are not inadmissible

as tending to prove the commission by him of another offense when the sole purpose of such testimony is to establish the fact that he did remember them; nor are indictments against his confederates based upon such statements inadmissible since they are competent as to the probability of the witness forgetting events which produced such startling results.

4. SAME—DEFENSE OF LOSS OF MEMORY.

The truth or falsehood of a defense that at the time he testified he did not remember, the defendant was and had been suffering from paresis which paralyzed his memory to such an extent that he could not be held responsible for his answers, is a question of fact for the jury, and its determination against him, if made upon sufficient evidence, will not be disturbed upon appeal.

5. TRIAL—DISTRICT ATTORNEY.

In the trial of a criminal case the district attorney is entitled to discuss before the jury all the facts and circumstances bearing upon the issue with the same freedom that is to be awarded to counsel in any case.

APPEAL from a judgment of the Appellate Division of the Supreme Court in the Third Judicial Department, entered June 10, 1902, which affirmed a judgment of the Kings County Court rendered upon a verdict convicting the defendant of the crime of perjury.

The facts, so far as material, are stated in the opinion.

Jerry A. Wernberg, for appellant.

John F. Clarke, District Attorney (Martin W. Littleton, of counsel), for respondent.

O'BRIEN, J.: The defendant was convicted of the crime of perjury and the judgment of conviction has been affirmed in the court below after what appears to be a thorough discussion of the questions involved. These questions and the facts out of which they arise are so fully set forth in the report of the case below that it is not necessary to repeat the statement here. (72 App. Div. 372.) It will be quite sufficient for every pur-

pose of a review in this court to refer to the facts in a general way.

The charge against the defendant which is set forth in the indictment is that he was called and sworn as a witness on the part of the People in a criminal case on the 19th day of December, 1899, and as such witness on the trial of the case he committed wilful and corrupt perjury. The charge is based upon the testimony of the defendant as a witness in the case to the effect that he did not remember certain facts which were material and necessary for the People to prove upon the trial, and which it is alleged were well known to the defendant. The case is peculiar and exceptional in this respect, that the defendant was not charged with swearing falsely with respect to any affirmative or negative fact, but in swearing falsely that he knew nothing about them one way or the other, or to use his own words when examined as a witness, that he did not remember. The indictment alleges, and the record discloses in great detail, the transactions which finally culminated in the defendant's conviction. On the 14th day of March, 1898, he appeared before the grand jury of Kings county, and then and there testified to certain corrupt and criminal transactions on his part with certain public officers of the city of Brooklyn, whereby they were to award certain contracts for public work to persons to be named by him and who were to act in his interest, and that he should divide with these officers certain fixed percentages of the money to be paid on these contracts by the city; that these corrupt and fraudulent agreements between the defendant and these city officers were completely executed. The contracts were awarded to the persons representing the defendant and the officers were paid the share of the proceeds stipulated. It is not necessary to describe this corrupt arrangement with greater particularity. It is enough to say that the defendant, as he then stated to the grand jury, conspired with various city officers to plunder the city by means

of fraudulent and corrupt contracts for public works in the city.

It is important, however, to note the leading and fundamental feature of this transaction. It was impossible to carry the scheme into successful operation without the active aid and co-operation of the several city officers in the different departments. These departments, which were intended by the charter to be checks upon each other, were not only neutralized, but by means of bribery made active participants in the conspiracy to defraud the city. Each officer was to act a designated part in the consummation of a common scheme of fraud, and hence it was impossible to view the act of any one of them in the performance of his part without revealing the details of the conspiracy as a whole, since if any one of the conspirators failed to act his part the scheme could not be carried into effect. Therefore, in every investigation concerning the acts and conduct of these several city officers, or the acts of any one of them, it became necessary to describe the whole transaction in order to show what the real scope and purpose of the scheme was and the legal responsibility of each and all of the actors therein. The whole scheme was fully revealed by the defendant in his testimony before the grand jury, and the result was that indictments were found against nine of these city officers, in which they were charged with various offenses.

On the 16th of May, 1898, the indictment against Robert W. Fielding, the deputy commissioner of the city works, was brought to trial and the defendant was sworn as a witness by the prosecution, and again testified substantially to the same facts that he had testified to before the grand jury, and the trial resulted in a conviction. Subsequently, and on April 24, 1899, some of the other city officers were brought to trial, and again the defendant was the principal witness, and revealed all the details of the corrupt and fraudulent conspiracy already described. So far the defendant's attitude was that of an informer against his confederates in crime. But about the

time of the last trial referred to an event occurred which seems
to have had some influence upon his mind and revealed a de-
sire upon his part to change his position.    The judgment of
conviction against Fielding was reversed in this court and a
new trial granted, not upon the merits, but upon certain ex-
ceptions taken at the trial which related entirely to the argu-
ment of the case before the jury by the district attorney.    (158
N. Y. 542.)    The defendant expressed great satisfaction at
this result and stated openly that he was sorry to see him con-
victed. ˙ On the 19th day of December, 1899, Fielding was
again brought to trial.    While the district attorney was pre-
paring for the trial he sent for and had an interview with the
defendant, who all along had been his principal witness and
was to be his principal witness on the new trial.    The district
attorney called the defendant's attention to an interview be-
tween them, when the new trial was granted by this court,
wherein the defendant expressed great delight at Fielding's
success.    He told the defendant that he knew he sympathized
with the defense, but he would have to go upon the stand and
testify to the facts, and proposed to refresh his memory by
reading to him from printed records what he had sworn to on
the several previous trials.    The defendant said he would be
glad to have the testimony read to him, and the district attor-
ney then proceeded to read it, asking the defendant after the
reading if it was correct and as he then recollected it, to which
the defendant replied that it was.    Only two or three days
after this interview the district attorney called the defendant
as a witness to prove the facts upon the new trial to which he
had testified on the former trial and before the grand jury, as
well as upon the trial of the other officers engaged in the con-
spiracy.    He propounded to him questions in various forms
intended to establish the facts charged in the indictment and
to which the defendant had so often testified before, and to all
these questions the defendant answered that he did not re-
member, and in this case these answers have been made the

basis of the charge of perjury of which the defendant has been convicted. The prosecution broke down and the trial resulted in Fielding's acquittal.

In order to sustain the charge of wilful and corrupt perjury against the defendant the prosecution was bound to prove to the satisfaction of the jury that the defendant did remember that he had made the corrupt and fraudulent agreement with Fielding, whereby the latter was to award contracts to the persons designated by the defendant, and had paid to him his share of the proceeds or the designated percentage of the contract price. It was competent for the People to sustain that issue by circumstantial evidence. The rule that prevails in cases of perjury, where one oath is placed against another, that there must be two witnesses to prove the charge, or in case only one witness is produced, there must be independent corroborating circumstances, has no application to this case. There was no witness produced upon this trial who could swear that the defendant knew and remembered the facts which were the subject of inquiry. That issue had to be determined upon circumstantial proof. The question for the jury was whether it was true, as the defendant pretended, that in the space of a few days his mind had become a perfect blank with respect to the facts which the questions called for. He had testified to them all before the grand jury, and on the former trial and on other trials only a very brief time before he was examined. Moreover, they were all brought to his attention two or three days before he was called as a witness by the district attorney when his former testimony was read to him from the records of these trials and which he then pronounced correct. The jury could determine from all this whether the defendant told the truth when he said that he did not remember any of the facts embraced in the questions, or whether on that occasion his answers were wilfully and corruptly false. It is hardly necessary to add that the verdict upon this question of fact is well sustained by the evidence.

We have no doubt that a charge of perjury may be based upon the testimony of a witness upon a judicial trial who has sworn that he did not remember the facts material to the inquiry, if it be shown by competent proof that he did remember them. It may be difficult to prove the charge in many cases, but in this case there was no lack of proof. A witness may commit perjury by falsely stating what he thought or what he did or did not remember, or what his opinion is when these matters become material to the issue. It may be difficult to prove that his thought or his memory or his opinion was otherwise, but that difficulty has been successfully met and overcome in this case. (Regina v. Schlesinger, 10 Ad. & El. [N. S.], 670; People v. Robertson, 3 Wheeler's Cr. Cas. 183; State v. Henderson, 90 Ind. 408; State v. Terry, 30 Mo. 368; State v. Knox, 61 N. C. 312; Com. v. Grant, 116 Mass. 17; Com. v. Brady, 5 Gray, 78; Wilson v. Nations, 5 Yerger, 211; People v. Courtney, 94 N. Y. 490; Bishop's Crim. Law, sec. 878; 3 Greenleaf's Ev. 197; Roscoe's Cr. Ev. 759, 814.)

The general doctrine to be found in these authorities warrants the conclusion that a witness who swears falsely, wilfully and corruptly to the effect that he does not remember certain material facts involved in the issue on trial, when in truth they are within his knowledge and recollection, is guilty of perjury.

One or two questions of law arising upon exceptions taken at the trial have been argued by defendant's counsel. It is claimed that the prosecution were permitted to prove at the trial that the defendant had committed other offenses than the one for which he was on trial. In a literal sense that may be true, but it is not true within the meaning of the rule of law that excludes proof of other crimes where a party is being tried for a specific offense. (People v. Molineux, 168 N. Y. 264.) The only offense of which the defendant was charged was perjury, and in order to prove that charge the prosecution had to put in evidence what the defendant had repeatedly sworn to on previous trials and investigations to the effect that

he had bribed several of the city officers.    This testimony was
not offered or admitted for the purpose of proving other
offenses, but for the purpose of establishing the fact that he
remembered and knew certain things which he swore that he
did not remember or know.     The previous statements and
admissions of the defendant were admissible to prove that in
stating that he did not remember certain things he testified
falsely.    The fact that the defendant in these statements, ad-
missions and declarations accused himself of being a party to
the conspiracy to defraud the city did not change the nature
or character of the proof which his previous acts and conduct
furnished with respect to the truth of his statement that he did
not remember these facts when called as an unwilling witness.
Everything that the defendant had sworn to or stated pre-
viously to the last trial of Fielding was admissible to show that
he remembered the facts when he testified that he did not.
The defendant was an informer upon his confederates and as
such he made confessions that not only involved them but him-
self as well, but they were none the less admissible to prove
that he knew the facts confessed as well upon the last trial as
upon the first.

The district attorney in his argument to the jury referred
to all the details of the conspiracy as disclosed by the defend-
ant in his testimony on the previous trials and before the grand
jury.     It was all pertinent to the issue in this case which was
whether the defendant knew and remembered the facts which
were first brought to light through his own action.     He did
not accuse the defendant of any crime not embraced in his own
confessions made repeatedly under oath.     The general scheme
in all its details could be legitimately discussed upon the trial
of an issue which involved the question whether the defendant
remembered it when called as a witness.     In the trial of a
criminal case the district attorney is entitled to discuss before
the jury all the facts and circumstances bearing upon the issue
with the same freedom that is to be awarded to counsel in any

case.  He may not attempt to inject into the case facts or circumstances foreign to the issue or not within the scope of the evidence, but subject to these restrictions he is entitled to argue the case with the same freedom of speech that the courts concede to counsel generally in the trial of issues of fact before juries.  " The jury system would fail much more frequently than it now does if freedom of advocacy should be unduly hampered and counsel should be prevented from exercising within the four corners of the evidence the widest latitude by way of comment, denunciation or appeal in advocating his cause."  (Per ANDREWS, J., in Williams v. Brooklyn El. Railroad Co., 126 N. Y. 102-3.)  The several indictments against the city officers found upon the testimony of the defendant were properly admitted in evidence.  The jury could not fairly judge with respect to the attitude of the defendant when he testified that he did not remember the facts involved in the questions propounded, without full information as to his attitude in the past.  They were entitled to know all that he had done and accomplished in bringing his confederates to justice in order to determine whether it was true in fact that he did not remember the events which produced such startling results to himself and his associates, and if he still knew and remembered these facts then to determine his real motives in swearing that he did not.  The indictments were the necessary result and outcome of the defendant's mental resolution to make full disclosure of the conspiracy against the city and they were the basis of all the legal proceedings that subsequently took place in which the defendant participated as the principal witness.  The history of the conspiracy in all of its details was necessary in order to give the jury a full and complete view of the defendant's attitude down to the time when he claimed that he had no memory concerning these multifarious and complicated transactions, and the  indictments and trials constituted important chapters in that history.

The real defense interposed in behalf of the defendant to the charge of wilful and corrupt perjury, and which occupies such a prominent place in the record, was that at the time when the testimony was given, now charged to be false, he was and had for some time been suffering from paresis or some similar mental disease that paralyzed his memory to such an extent that he could not be held responsible for his answers to the questions propounded to him upon the trial.   It is not necessary in this court to say much in regard to that defense. It is quite sufficient to observe that it presented a question of fact that was fully and fairly tried before the jury.   The evidence bearing upon it, consisting in part of the opinions of experts, was submitted to the jury, and the verdict must be regarded as the fair and deliberate judgment of the body which, under our system of jurisprudence, is organized to determine matters of fact, that it was without merit.   Of course it is possible that a person may be suddenly afflicted with a mental disease that completely prostrates all of his intellectual faculties, but whether that claim was true or false in this case was a question for the jury.   When the evidence bearing upon that issue, direct and circumstantial, is fairly considered the conclusion of the jury is not open to question.   We think that the record presents no question that would warrant this court in interfering with the judgment, and so it must be affirmed.

PARKER, Ch. J., BARTLETT, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Judgment of conviction affirmed.