## STATE v. FRANK STOREY.[1]

### April 12, 1921.

### No. 22,149.

**Perjury — proof by circumstantial evidence.**

1. Perjury may be proved by circumstantial evidence, if it establishes guilt beyond a reasonable doubt.

**Evidence of unrelated crime.**

2. The trial court did not receive evidence that the defendant had committed another unrelated crime.

**Employment of convicted witness by prosecutor.**

3. Where a witness, on cross-examination, admits that he has been convicted of crime, it is proper on redirect examination to mitigate the odium of his conviction by showing that, after he paid the penalty, he was received into the employ of the attorney who prosecuted him.

[1] Reported in 182 N. W. 613.

**Evidence of sharing in bribe admissible.**

    4. Testimony tending to show that defendant participated in the fruits of bribery in connection with the case in which he is alleged to have given false testimony was proper.·

**Charge to jury.**

    5. There was no error in the charge of the court.

Defendant was indicted by the grand jury of Beltrami county charged with the crime of perjury, tried in the district court for that county before McClenahan, J., and a jury, and found guilty as charged in the indictment. Defendant's motion for a new trial was denied. From the judgment and sentence, defendant appealed. Affirmed.

*Walter F. Dacey* and *W. H. Gurnee,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, and *Graham M. Torrance,* County Attorney, for respondent.

HALLAM, J.

Defendant was convicted of perjury, alleged to have been committed while testifying as a witness for the state on the trial of Joseph Thiebault of the charge of keeping an unlicensed drinking place in the village of Baudette. Defendant appeals.

1. The first claim is that the state failed to establish the falsity of defendant's testimony.

There was evidence tending to prove the following facts: In May, 1919, the county attorney of Beltrami county sent defendant and John Musolf from Bemidji to Baudette to make investigation as to illegal sale of liquor. They were there from May 7 to May 12 inclusive. On returning, defendant made a detailed report, showing that he had bought liquor from five persons whom he named in his report. One of those named was Thiebault. In each case defendant turned in a sample of the liquor bought which he had sealed and labeled. On May 21, while standing on the street in Bemidji a party of five men passed by. Defendant mentioned their names and mentioned Thiebault as one of them. Soon after that, defendant went to Duluth. Before leaving for Duluth, he was subpoenaed to appear before the grand jury on September 9. He told parties in Duluth that a man whom he named had told him there was $200

in it if he could fix those cases at Bemidji. A short time before September 9 he told another party he did not think he was going to Bemidji as a witness at all, and added: "If Torrance (the county attorney) happens to ask you that, if you see me in here, why tell him no, you didn't see me." He did not go to Bemidji until the afternoon of September 11. Then he did not go to the court house. After being there some time, he called on the county attorney and told him he had made a mistake as to three of the men charged. These three had entered pleas of not guilty. Two others who pleaded guilty he had no difficulty in identifying. Nevertheless, Thiebault and the others were indicted. Before Thiebault's case was called and while a case against one Dewey was on trial, defendant told another operator that there was $50 apiece in it in the Dewey case, that if they cleared all the cases there was $2,000 in it, and "another $2,000 when we get to Fergus Falls." When asked how the cases could be cleared, he said: "Just not identify the men and no jury in the world can throw a conviction on them." When he took the samples of liquor at Baudette, he put them in separate bottles and sealed the bottles with sealing wax and made an imprint on the wax with a Yale lock key. He was told by the county attorney to produce the key on the trial. He did not do so. When placed on the stand, he said he bought whiskey in the place charged as Thiebault's place on five successive days, and that always the same man was behind the bar and sold the liquor. There is evidence of another witness that, during all this time, Thiebault was in entire charge of this place and was the only man who tended bar or worked about the place. When defendant was asked on the trial of the Thiebault case whether Thiebault was the man who sold him the liquor, he said he was not. It is in this that the state charges perjury.

Under ordinary rules of evidence the verdict would be amply sustained. So strongly impressed was the trial judge who tried the Thiebault case that this defendant committed perjury that, after hearing his testimony, he ordered his arrest, acting under G. S. 1913, § 8564.

But defendant contends that the proof required to establish the fact of perjury is greater than is required to establish other crimes, that the books place "perjury and treason in a class by themselves insofar as proof is concerned."

There are old decisions that, to convict of perjury, two witnesses must

testify directly to the falsity of defendant's oath. See Jones, Ev. (2d ed.) § 900.

This rule has been generally relaxed, but the greater number of decisions still sustain the rule that the positive testimony of at least one witness should be required, and, if there is but one such witness, that his testimony must be corroborated as to material facts, that "oath against oath" is never sufficient. 1 Russell, Crimes, p. 508; 3 Wigmore, Ev. §§ 2032, 2040 (where the history and development of the rule are reviewed); Greenleaf, Ev. § 257; Underhill, Crim. Ev. 468; Commonwealth v. Butland, 119 Mass. 317; State v. Gibbs, 10 Mont. 213, 25 Pac. 289, 10 L.R.A. 749; Gandy v. State, 27 Neb. 707; State v. Blize, 111 Mo. 464, 20 S. W. 210; People v. McClintic, 193 Mich. 589, 160 N. W. 461, L.R.A. 1917 C, 52; Galloway v. State, 29 Ind. 442; U. S. v. Hall, 44 Fed. 864; Williams v. Commonwealth, 91 Pa. St. 493; U. S. v. Wood, 14 Pet. 430, 11 L. ed. 527.

To illustrate: In a case in California, where the rule is statutory, it was charged that, in a prosecution of another for larceny of a cow, defendant falsely testified that he met the cow on the road at a certain time near the residence of the party charged with the theft and that the person so charged then took her up as an estray. The court said: "To support the charge of perjury as to the alleged false statement of defendant that he met the cow at the time stated upon this particular public highway, it was necessary to produce the positive testimony of one witness at least that such meeting did not take place, as that the defendant was not at that time at that place, or that the cow was not there." People v. Wells, 103 Cal. 631.

The reason of the rule is stated in Thomas v. State, 51 Ark. 138, 10 S. W. 193, as follows: "The oath of the prisoner is entitled to have the same effect as is given to that of a credible witness. If nothing more than the testimony of one witness was introduced to prove its falsity, the scale of evidence would be exactly balanced, and additional evidence would be necessary to destroy the equilibrium before the accused could be convicted."

This reason is a survival of what Mr. Wigmore calls the "quantitative theory of testimony." Witnesses are to be counted and their testimony, to an extent at least, is measured by force of numbers, not by weight.

See Allen v. U. S. 194 Fed. 664, 667, 114 C. C. A. 357, 39 L.R.A. (N.S.) 385.

In State v. Courtright, 66 Oh. St. 35, 41, 63 N. E. 590, 591, the reason was stated as follows: "To convict of some great crimes, more or stronger evidence is required than to convict of others. Of such enormity is the crime of treason, that by express statute, unless the accused confess in open court, he shall not be convicted except by the testimony of two credible witnesses to the same overt act laid in the indictment. * * * And perjury has always been regarded as an unnatural and heinous crime, because of its tendency to jeopardize person and property and even life. * * * Therefore, we consider that when one is charged with the grave crime of perjury, it is but a just safe-guard that more than purely circumstantial evidence shall be adduced to establish the corpus delicti."

In Best, Evidence, §§ 605, 606, this reason is given: "When we consider the very peculiar nature of this offense, and that every person who appears as a witness in a court of justice is liable to be accused of it by those against whom his evidence tells, who are frequently the basest and most unprincipled of mankind; and when we remember how powerless are the best rules of municipal law without the co-operation of society to enforce them—we shall see that the obligation of protecting witnesses from oppression, or annoyance, by charges, or threats of charges of having borne false testimony, is far paramount to that of giving even perjury its deserts. To repress that crime, prevention is better than cure."

In this case we are not primarily concerned with the question whether the direct testimony of one witness, without more, will sustain a conviction, for in this case there was no direct testimony of the falsity of the oath. The evidence was circumstantial. But, if direct testimony of one witness is required, then, of course, circumstantial evidence does not suffice, and there are decisions which explicitly hold that circumstantial evidence alone of the falsity of the oath is not sufficient. Allen v. U. S. 194 Fed. 664, 114 C. C. A. 357, 39 L.R.A.(N.S.) 385; State v. Courtright, 66 Oh. St. 35, 63 N. E. 590; 30 Cyc. 1452, and textbooks above cited.

The question is a new one in this state, and we are at liberty to choose the rule which appeals to us as being most consonant with reason. Notwithstanding the high authority above cited, we are of the opinion that

the rule laid down is out of harmony with our system of jurisprudence. In our opinion it is one of the rules of the common law inapplicable to our situation and "inconsistent with our circumstances," and hence not to be followed. See State v. Pulle, 12 Minn. 99 (164). We find ourselves unable to approve the doctrine that perjury is a more heinous crime than murder or that one charged with perjury should have greater immunity than one charged with murder. Suppose, for example, the only eye witness to a murder should testify that the accused is not the man who committed the crime, and yet the circumstantial evidence of guilt is so strong that the jury convicts of first degree murder. With what consistency can it be said that a quality of testimony which will justify a court in condemning a defendant to life imprisonment, or, in some jurisdictions, to be hanged, is insufficient to sustain a conviction of the falsifier of the crime of perjury for which he may suffer a penalty of a short term of imprisonment. The lightness with which, we are pained to say, the oath of a witness is too often treated, does not warrant us in making conviction of the crime of perjury most difficult of all crimes of which state courts have jurisdiction. We hold that perjury may be proved by circumstantial evidence, if proof is made beyond reasonable doubt, as in the case of other crimes. Nor is this doctrine without authority to sustain it. In re Metcalf, 8 Okla. Crim. 605, 129 Pac. 675, 44 L.R.A.(N.S.) 513. See People v. Doody, 172 N. Y. 165, 64 N. E. 807, holding that the old rule has no application where the proof of the crime is necessarily based on circumstantial evidence.

2. Defendant contends that the court permitted proof that defendant had committed another unrelated crime. We do not so understand the record. The contention is based on testimony in substance as follows: After defendant had testified in the Thiebault case that he had made a mistake as to the identity of three out of five men identified, the county attorney on cross-examination asked him to explain how he made that mistake. He said: "I can't just go on and explain it." He was then asked if he had ever had similar experience in making mistakes in the identity or names of persons he had procured liquor from. He answered that he had several different times. Then followed this testimony: A. Yes, one time I made a mistake in nine. Q. And nine out of nine? A. Nine out of nine. Q. And that was the highest average you ever secured? A. That is the highest average I have made. Q. That is 100

per cent? A. Yes, sir. Q. Where did you make that record? A. I made it in Michigan one time.

Further than that he pleaded inability to give the month, the year, the court, the town, the name of the judge or prosecutor, saying: "I can't remember because that is a little too far back for me to remember." Then occurred the following: Q. How much too far back, how far back can you remember? A. I remember back probably a year back, something like that. Q. Then your memory quits? A. My memory quits after that on those cases because I don't pay no more attention to them.

On the perjury trial, the court permitted this testimony to be read into the record by the prosecution. There was no error in this. No one who heard this testimony could really think that the defendant in giving it was convicting himself of another crime. It was simply an exhibition of utter collapse.

3. Appellant proved on cross-examination of one of the state's witnesses that he had been convicted of crime and had served a term in a penitentiary. On redirect examination the state was permitted to prove that after his release from prison he was received into the employ of the prosecuting attorney who prosecuted him, and also of other peace officers. This testimony was properly received. The testimony as to his conviction was an impeachment of his character and incidentally of his veracity. The subsequent testimony has some proper tendency to mitigate the odium of his conviction. See 40 Cyc. 2644-2647.

4. Testimony was received that defendant admitted that he had been approached for the purpose of bribery and other testimony was received tending to show that he had contemplated participating in the fruits of bribery in connection with liquor prosecutions. The alleged bribery did not relate to this case alone but to a number of cases of which this was one. The testimony was properly received.

5. The charge in the indictment was that defendant committed perjury on the trial of an indictment charging Thiebault with maintaining a place where intoxicating liquor was sold on May 12, 1919. In answer to a question of a juror, the court charged: "If you find he did not buy from Thiebault nor at all on the 12th, but are obliged to find that he did buy from Thiebault on the other days, the fact that he did not buy on the 12th would not require you to acquit him," and further in substance said that doubt surrounding the question whether there was a sale on the

twelfth might affect the credibility of witnesses and was to be considered in its bearing on the probability of sales on other days. The instruction seems to us free from error. As an abstract statement it was correct and we find no reasons for holding that under the evidence in this case it was either erroneous or misleading.

Judgment affirmed.