## UNITED STATES v. OTTO.
### No. 2.

Circuit Court of Appeals, Second Circuit.
Nov. 2, 1931.

SWAN, Circuit Judge, dissenting.

Martin Conboy, of New York City (David Asch, of New York City, of counsel), for appellant.

Thomas T. Cooke, Sp. Asst. to Atty. Gen., for the United States.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

The defendant has questioned the sufficiency of the indictment, but only by motion at the close of the evidence. Since no demurrer was filed, we need now consider only the adequacy of count 2 as that count stood after certain portions had been stricken out by the trial court. Originally the count contained several assignments designated (a) (b), etc., but all that was left when the case went to the jury were (d) and part of (e). Assignment (d) was "that he, the said James J. Otto, never talked to Dan O'Connell during the year 1927 concerning the Albany Baseball Pool;" and what was left of (e) was "that he, the said James J. Otto, did not know anything about Dan O'Connell's connection with the Albany Baseball Pool or the reason why Dan O'Connell pleaded guilty at Boston, Massachusetts, in November, 1927, to participation in said Pool. * * *"

It is claimed that it was not enough to allege that these allegations were false, and that failure to allege affirmatively what the truth was constitutes a fatal defect. While it is true that there is conflict in the books on this subject, the great weight of authority is to the effect that an allegation of the testimony given, accompanied by an allegation that it was false, is sufficient, where, as here, proof of the falsity of the testimony alleged to have been given of necessity proves its converse to be true, and so the allegation of falsity is in effect an allegation which shows with certainty what the government claims the truth to have been. This question was considered in Sharron v. United States (C. C. A.) 11 F.(2d) 689, and decided adversely to the defendant. Nothing has been brought to our attention, or occurs to us, to lead us to change the position there taken that such a technical

objection as this is based on nothing, at most, but a mere formal defect which had no tendency to prejudice the defendant. 18 USCA § 556.

■■■ The falsity of the assignment designated as (d) was shown only to the extent it could be by circumstantial evidence. No witness testified that the defendant did talk with O'Connell during the year 1927 concerning the Albany Baseball Pool. There was ample proof that the defendant had the opportunity to have done so, and, as they both pleaded guilty to the same indictment in Boston, it is highly probable that he did so before they pleaded. This requires us to determine whether the old, and firmly established, principle in criminal jurisprudence as applied to proof of the commission of the crime of perjury that direct and positive evidence is necessary will be adhered to, or whether we will agree with the courts in some jurisdictions that perjury may be proved by° circumstantial evidence alone. No real help is obtained by the use of noble platitudes to the effect that the crime of perjury pollutes the stream of justice at its source with the implied conclusion that it must be stamped out at all costs. We all know that this crime is one of the most serious and that its effects are far-reaching, obstructive, and destructive. We all know, too, that a person accused of this crime is guilty only if he has knowingly sworn falsely. A witness under oath need not at his peril testify to the truth considered as an absolute fact, if it ever can be, according to the deductions and conclusions of a jury, but as a matter of legal right is permitted, and as a matter of conscience is firmly bound, to testify to what he honestly knows the truth to be, however strongly appearances may point to the contrary. And so there has been recognized and applied in prosecutions for perjury the salutary rule, for the benefit of that vast army of honest witnesses who would otherwise stand in justified fear of overzealous prosecutors, that one cannot be convicted of this crime without direct evidence of guilt. The quantum of such evidence is not considered now, for in this case there was none whatever. Of course, perjury is not the only crime whose proof must be by evidence of a particular kind and quantity. Treason is the other.

In some of the states, the courts have upheld convictions for perjury on circumstantial evidence alone. State v. Storey, 148 Minn. 398, 182 N. W. 613; State v. Cerfoglio, 46 Nev. 332, 205 P. 791, 213 P. 102.

See, however, notes following these cases in 15 A. L. R. 634, and 27 A. L. R. 857. People v. Doody, 172 N. Y. 165, 64 N. E. 807, is an instance of a conviction for perjury based on testimony of a defendant that he did not remember at a subsequent trial facts to which he had testified several times before and concerning which his memory had recently been refreshed. In that case the subject-matter dealt with was that intangible something called memory, and the proof, while called circumstantial, was as direct as the subject-matter permitted. It is obvious that all knowledge, apart from that possessed by the person himself, as to what one does remember, lies in what common experience shows he ought under given circumstances to remember. Proof of the ultimate fact can rise no higher than the limitations of human nature will allow, and when as direct proof of a fact as that fact will ever, not in the particular instance alone, but always, permit, the general rule will not preclude a conviction when the presumption of innocence has been overcome and no reasonable doubt of guilt remains. See Marvel v. State (Del. Sup.) 131 A. 317, 42 A. L. R. 1058.

Cases which hold that circumstantial evidence is never enough to support a conviction for perjury are illustrated by Clayton v. United States (C. C. A.) 284 F. 537, and Allen v. United States (C. C. A.) 194 F. 664, 39 L. R. A. (N. S.) 385. Without doubt they are in the majority. To the extent that whenever the subject-matter is in its nature susceptible of direct proof, we agree with them.

The subject-matter here was whether the defendant talked to O'Connell in 1927 about the Albany Baseball Pool. That was susceptible of direct proof, although we may well assume that no such proof was actually obtainable. Inability, or failure for any other reason, to produce it at this trial, left a charge capable in its nature of being proved by direct and positive evidence wholly unproved by such evidence and so unproved as a matter of law.

■■■ The specification (e) as it was left by the trial court contained the charges that the respondent testified that he did not know anything about O'Connell's connection with the Albany Baseball Pool or why he pleaded guilty in Boston. It is now claimed that this was all one specification which must have been proved as a whole. Yet more than one specification may be contained in the same count, and where the charge is laid

in separate assignments, proof of any one of them will support a conviction. People v. Gazelle, 299 Ill. 58, 132 N. E. 273; State v. Thomas, 2 Boyce (25 Del.) 20, 78 A. 640; Commonwealth v. McLaughlin, 122 Mass. 449. Whether the pleader sees fit to separate the assignments by giving each a distinctive mark as was otherwise done in this count or to separate them by using the disjunctive "or" is but a matter of form which has no effect upon the merits of the controversy. Such a formal matter is not cause for reversal, 18 USCA § 558.

Treating subdivision (e) in respect to each of its two separate assignments, we find the record devoid of any proof that the defendant did know that he knew the reason why O'Connell pleaded guilty in Boston. He had, no doubt, whatever conclusion he may have reached from the fact that O'Connell pleaded guilty. That fact was common knowledge, and a fair inference would be that he pleaded guilty because he was guilty. If this was all the inquiry of the respondent before the grand jury is taken to mean, it was certainly wholly immaterial, for his conclusions were not relevant; and, if the actual cause or causes which were behind O'Connell's plea were something apart from his guilt, there is no evidence to show that this respondent did know what they were.

The really important assignment in this count is that the respondent testified that he did not know anything about O'Connell's connection with the Albany Baseball Pool. If the respondent did so testify before the grand jury at the session covered by this count, his conviction was proper, for there was sufficient evidence to show that he did know about O'Connell's connection with the Albany Baseball Pool considered as the lottery called the "B. M. A. & C. C." which ran throughout 1924 and part of 1925 until this defendant withdrew from it. There was no evidence that the defendant had any knowledge of O'Connell's connection with the lottery called the "C. C. & B. M. A." which Otto and Kane started in 1926, unless the fact that O'Connell pleaded guilty in Boston to an indictment for using the mails to defraud which covered a period in which the time the "C. C. & B. M. A." was in operation was included is some evidence of this respondent's knowledge of his connection with the "C. C. & B. M. A." But although O'Connell's plea was an admission by him that he was guilty under every count in that indictment there was nothing to show that this defendant knew that he (O'Connell) had any connection whatever with the "C. C. & B. M. A." Indeed, a reading of the testimony given by the respondent before the grand jury on February 25th, which is the session covered by the second count, shows clearly that the defendant consistently refused to answer questions relating to the operation of any lottery falling within the general term "Albany Baseball Pool" previous to the formation of the "C. C. & B. M. A." in 1926, on the ground that his answers would tend to incriminate him. He was plainly a hostile and reluctant witness. He maintained throughout the distinction between the "C. C. & B. M. A." begun in 1926 and what had taken place before. Only once was he asked a question which referred to the Albany Baseball Pool in those words. He then denied having paid O'Connell any money which came out of that pool, but then changed his answer to a refusal to answer on the ground that it would tend to incriminate him. It was only when he was asked about the "C. C. & B. M. A." that he was willing to, and did, testify.

The testimony given before the grand jury which the government now claims supports this allegation in the indictment follows in full:

"Q. In 1927 you paid money to Dan O'Connell, didn't you? A. No, sir.

"Q. Not a cent? A. No, sir.

"Q. Did you pay it to any politicians up there in Albany? A. No, sir, I did not.

"Q. It all went to Pringle and you and Kane? A. Yes, sir.

"Q. Did anybody ever ask you for any? A. No, sir.

"Q. No politicians in Albany County ever asked you for any money out of this pool? A. No, sir.

"Q. How about 1928? A. No, sir.

"Q. No one ever asked you for any money out of it then? A. No, sir.

"Q. And you never paid any? A. No, sir.

"Q. Any of your colleagues pay any, do you know? A. No, sir.

"Q. Have no knowledge of that? A. No, sir.

"Q. Didn't you used to go to Dan O'Connell's house once a week? A. I was there every night, pretty near.

"Q. You would call him a politician,

wouldn't you? A. I would call him a politician, yes.

"Q. When were you there every night, during what years? A. Ever since I have know him.

"Q. Specifically, during 1928 were you there every night in the week at his house? A. I don't recall that.

"Q. You were there a great deal? A. No, I wasn't there—I wouldn't say I was there every night, no, sir.

"Q. How often were you there on the average? A. That I don't recall.

"Q. Several times every week? A. I would say that, yes sir.

"Q. How about 1927? A. Same as 25 or 50 more always hung around there.

"Q. In 1927 you were there several times every week? A. Yes.

"Q. Did you ever talk to him about the pool? A. No, sir.

"Q. Never mentioned it to him? A. No, sir.

"Q. He never mentioned it to you? A. No, sir.

"Q. He wasn't in the least interested in it? A. No, sir.

"Q. Don't you know he pleaded guilty in November, 1927, to participation in the pool in Boston? A. I don't think it was 1927, I don't know.

"Foreman: Did he ever plead guilty?

"The Witness: He was in Boston the same as myself.

"Foreman: Did he plead guilty?

"The Witness: He pleaded guilty there, yes, sir.

"Q. Did you talk to him about it then? A. No, sir.

"Q. You didn't discuss the case with him? A. No, sir.

"Q. You saw him several times a week, but never discussed the case? A. No, sir. We were all there, what he was there for I don't know.

"Q. You pleaded guilty in November, 1927, to participation in this C. C. & B. M. A. pool in Boston, Mass., didn't you? A. I don't recall the date, I plead guilty.

"Q. And Dan O'Connell also plead guilty at the same time? A. Yes, sir.

"Q. Do you know what his connection with the pool was? A. No, sir.

"Q. Did you ever see him in connection with the operation of it? A. No, sir.

"Q. You don't know the reason he plead guilty? A. No, sir, not any more than myself.

"Q. Would you say he had no connection with the pool prior to the time he plead guilty? A. Not as far as I was concerned.

"Q. You didn't know anything about it? A. No, sir.

"Q. So far as your knowledge goes, Dan O'Connell hadn't the slightest connection with this pool although he plead guilty in Boston? A. No, sir.

"Q. Did you discuss with anybody Dan O'Connell pleading guilty? A. No, sir.

"Q. Did you discuss his connection with the case with anybody? A. No, sir."

It is quite apparent from this that the defendant did not testify before this grand jury that he had no knowledge of O'Connell's connection with the Albany Baseball Pool, but testified only to his lack of knowledge of O'Connell's connection with the pool called "C. C. & B. M. A." The government proved that the defendant knew of O'Connell's connection with the Albany Baseball Pool previous to the formation of the "C. C. & B. M. A." in 1926; this defendant refused to, and did not, testify at the count 2 session of the grand jury as to that period. The respondent did testify at that session as to the time following the opening of the "C. C. & B. M. A.," but the government failed to prove that this defendant had any knowledge that O'Connell was connected with the Albany Baseball Pool during that time.

Judgment reversed.

SWAN, Circuit Judge, dissents with opinion.

SWAN, Circuit Judge (dissenting).

In my opinion the defendant was guilty of perjury in respect to the charge that he "did not know anything about Dan O'Connell's connection with the Albany Baseball Pool." This charge was based upon the following testimony.

"Q. You pleaded guilty in November, 1927, to participation in this C. C. & B. M. A. pool in Boston, Mass., didn't you? A. I don't recall the date, I plead guilty.

"Q. And Dan O'Connell also plead guilty at the same time? A. Yes, sir.

"Q. Do you know what his connection with the pool was? A. No, sir.

"Q. Did you ever see him in connection with the operation of it? A. No, sir.

"Q. You don't know the reason he plead guilty? A. No, sir, not any more than myself.

"Q. Would you say he had no connection with the pool prior to the time he plead guilty? A. Not as far as I was concerned.

"Q. You didn't know anything about it? A. No, sir.

"Q. So far as your knowledge goes, Dan O'Connell hadn't the slightest connection with this pool although he plead guilty in Boston? A. No, sir."

To my mind it seems clear that "the pool" to which these questions and answers referred was the pool with which the indictment in Boston was concerned. That indictment charged that the defendants conspired in Albany about March 15, 1923, to transport from the state of New York to the state of Massachusetts tickets in a lottery, "to wit, the lottery sometimes known as The Albany Pool and sometimes known as the C. C. & B. M. A. Pool," and that said conspiracy continued until the date of the indictment, March, 1927. One of the overt acts charged was the transportation of lottery tickets in June, 1924. I see no reason to suppose that Otto's answers above quoted referred only to so much of the conspiracy as took place in 1926. If they did not, his testimony that he did not know about O'Connell's connection with "the pool" was proved false and perjurious beyond question by the direct testimony of at least two witnesses.

If the conviction were affirmed on this ground, as I think it should be, it would be unnecessary to consider whether circumstantial evidence alone may be enough to support a conviction of perjury. The authorities are not in accord on that subject, and I believe the question is still open in this circuit. In my judgment we should adopt the rule that circumstantial evidence may suffice, if sufficiently cogent, without the limitation which the opinion of the majority of the court places upon it. See State v. Storey, 148 Minn. 398, 182 N. W. 613, 15 A. L. R. 629; Gordon v. United States, 5 F.(2d) 943, 945 (C. C. A. 8).