The PEOPLE of the State of Colorado, Petitioner, Cross–Respondent,

v.

Steve FUESTON, Respondent, Cross-Petitioner.

No. 86SC50.

Supreme Court of Colorado, En Banc.

Jan. 25, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for petitioner, cross-respondent.

Don Meinhold, Colorado Springs, Joseph (Sib) Abraham, Jr., Charles Louis Roberts, El Paso, Tex., for respondent, cross-petitioner.

Chief Justice QUINN delivered the Opinion of the Court.

We granted certiorari to consider the decision of the court of appeals in *People v. Fueston*, 717 P.2d 978 (Colo.App.1985), which affirmed the conviction of the defendant, Steve Fueston, for perjury in the

first degree and reversed his conviction for offering a false instrument for recording. The questions raised in this case are (1) whether in a perjury prosecution documentary evidence originating from the defendant is sufficient to establish the falsity of the defendant's sworn statement, and (2) whether the court of appeals erred when, in reversing the defendant's conviction for the crime of offering a false instrument for recording because the information failed to properly allege that offense, it ordered the trial court on remand to dismiss the charge with prejudice. We affirm in part, reverse in part, and remand with directions.

## I.

The defendant was charged by information with the class 5 felony of offering a false instrument for recording, § 18–5–114, 8B C.R.S. (1986), and the class 4 felony of perjury in the first degree, § 18–8–502, 8B C.R.S. (1986). The count of offering a false instrument alleged, in pertinent part, that on or about October 1, 1982, the defendant feloniously presented to a public office "a written instrument, to-wit: State of Colorado Renewal Application for Malt Vi[n]ous, and Spirituous Liquor License, relating to and affecting real and personal property and directly affecting contractual relationships, knowing that it contained a materially false statement and materially false information," with intent to defraud and with knowledge that the instrument would be filed and become part of the records of the public office. The perjury count·alleged that on or about June 17, 1983, the defendant

> feloniously and knowingly ma[d]e a materially false statement, to-wit: "I was never aware that any stock was ever issued to me. I never received any certificates or anything." in an official proceeding, to-wit: Liquor and Beer Li[c]ences Board Renewal Hearing, City of Colorado Springs, which he did not believe to be true and which was made

under an oath required and authorized by law....

The prosecution's evidence, much of which was documentary in nature, established that the defendant first applied for and obtained a Colorado liquor license in August 1975. He has owned the Peppermint Lounge in Colorado Springs since that time, and had renewed his liquor license each year through 1982 by filing a renewal application with the city clerk's office. The renewal application filed on October 1, 1982, was for the period ending on November 19, 1983. This renewal application contained the following question: "Has any person, as applicant, partner, officer, director, stockholder or employee, ever ... had an alcoholic beverage license suspended or revoked?" The defendant answered "no" to this question. The renewal application also contained an affidavit, signed by the defendant in the presence of a notary, stating that the contents of the application were true to his own knowledge.[1]

In 1982, Colorado Springs hired a liquor license enforcement officer. This officer, Matt Cook, testified that in reviewing the Peppermint Lounge file he uncovered a letter from the Washington State Liquor Control Board indicating that the defendant had been the manager of a lounge known as "the Tiki Restaurant" in Tacoma, Washington, in the early 1970s and was listed as a corporate officer in ARM, Inc., which held the liquor license to the lounge. The letter also indicated that the corporate name of ARM, Inc. was later changed to Howven, Inc., and that a series of liquor violations led to the cancellation of the liquor license held by Howven, Inc. as of October 16, 1974.[2] A subsequent investigation by Cook disclosed that on March 2, 1973, the defendant was elected to the board of directors of Howven, Inc. and was also elected as vice president, secretary, and treasurer. Another corporate record of Howven, Inc. disclosed that on April 2, 1973, the defendant held 412 shares of the

---

1. The identical question and answer also appeared on the renewal application forms filed by the defendant in 1980 and 1981.

2. The order of cancellation was entered by the Washington State Liquor Control Board on August 16, 1974, but by its own terms it did not become effective until the close of business on October 10, 1974.

1,250 shares of outstanding corporate stock in Howven, Inc. Clark's investigation led to the public hearing before the Colorado Springs Beer and Liquor License Advisory Board on June 17, 1983.

At the defendant's perjury trial, the prosecution presented testimony from the chairman of the Colorado Springs Beer and Liquor License Advisory Board that at the board hearing the defendant testified under oath to the truth of the statements made on his renewal application filed in October 1982. The prosecution also elicited testimony from the liquor license enforcement officer that the defendant stated under oath during the hearing that, although he served as a member of the board of directors of the Washington corporation and was elected vice president, secretary, and treasurer in 1973, he was never issued any stock or stock certificates by the corporation.

The trial court admitted into evidence various public records offered by the prosecution, two of which are of central importance to the conviction for perjury. One document, which was admitted to prove the falsity of the defendant's sworn testimony before the Colorado Springs Beer and Liquor License Advisory Board, was a sworn statement signed by the defendant as secretary of Howven, Inc. on April 2, 1973, and filed with the Washington State Liquor Control Board. In this document the defendant declared under penalty of perjury that its contents were true and listed Howard V. Krewson as the president of Howven, Inc. and the defendant as vice president, secretary, and treasurer, and further stated that Krewson and the defendant were the sole stockholders, with the defendant holding 412 of the 1,250 outstanding shares. Also admitted to prove the falsity of the defendant's sworn testimony before the Colorado Springs Beer and Liquor License Advisory Board were the corporate minutes of March 2, 1973. The minutes, which were also filed with the Washington State Liquor Control

Board, were signed by the defendant as secretary of Howven, Inc. and stated that at a meeting of the board of directors on that date the corporate name was changed from ARM, Inc. to Howven, Inc., and that the defendant was elected to the board of directors and also was elected as vice president, secretary, and treasurer of the corporation. The corporate minutes contained the following resolution:

RESOLVED That the Secretary–Treasurer shall issue 75% percent of the outstanding stock to Howard V. Krewson [the president of the corporation], and 25% percent of the outstanding stock to Steven M. Fueston.[3]

The defendant testified in his defense that he signed these documents at the direction of his supervisor's attorney, that he had been unaware of their contents, and that he never issued or received any stock. The jury returned a guilty verdict on both counts, and the defendant was subsequently sentenced to a probationary term of five years.

The defendant appealed his convictions to the court of appeals, claiming that the evidence was insufficient to support either conviction and that the allegations in the information relating to the charge of offering a false instrument for recording were fatally infirm. The court of appeals affirmed the perjury conviction, concluding that the evidence was sufficient to satisfy the "two witness" rule of section 18–8–506, 8B C.R.S. (1986), since "the requirements of the rule can be satisfied by independent documentary evidence, if that evidence is of sufficient weight." *Fueston*, 717 P.2d at 980. The court of appeals reasoned that for purposes of the "two witness" rule the corporate record of April 2, 1973, signed by the defendant and stating that he held 412 of the 1,250 outstanding shares, was the "equivalent of the testimony of a witness directly contradicting defendant's sworn testimony in all respects," 717 P.2d at 980,

**3.** In addition to these critical documents, the amendments to the Articles of Incorporation of ARM, Inc., dated March 2, 1973, were also admitted into evidence. These amendments were filed with the Secretary of State of Washington, were signed and sworn to by the defendant as secretary of the corporation, and stated that the name of the corporation had been changed to Howven, Inc., that the defendant was a member of the board of directors, and that there were 1,250 shares of outstanding stock.

and that the corporate minutes of March 2, 1973, also signed by the defendant, although not by themselves conclusive proof of the falsity of the defendant's sworn statement, nonetheless were "equal in weight to the testimony of another witness and [were] inconsistent with the innocence of defendant." *Id.* In the court of appeals' view, therefore, these documents considered together were "the documentary equivalent of a contradicting witness and the independent corroboration required by the 'two-witness rule.'" *Id.* at 980–81.

The court of appeals reversed the defendant's conviction for the crime of offering a false instrument for recording, holding that allegations in the information failed to allege which of the many statements contained in the defendant's 1982 liquor license renewal application were false. *Id.* at 982. Since, in the court of appeals' view, the charge was fatally defective, it remanded the case to the district court with directions to dismiss that charge with prejudice.

Both the defendant and the People subsequently filed petitions for certiorari. We granted the defendant's petition to consider whether the court of appeals erred in upholding the defendant's conviction for perjury when the falsity of the sworn testimony was established by documentary evidence which originated from the defendant himself. We also granted the People's petition to consider whether the court of appeals, in reversing the defendant's conviction for the crime of offering a false instrument for recording due to a fatal defect in the charging document, erroneously ordered the trial court to dismiss that charge with prejudice.

## II.

We first consider whether the prosecution's documentary evidence—most particularly, the sworn statement signed by the defendant on April 2, 1973, stating that he held 412 of the 1,250 outstanding shares of Howven, Inc., and the corporate minutes of March 2, 1973, also signed by the defendant, stating that 25 percent of the outstanding shares of Howven stock were to

be issued to the defendant—was sufficient to support the defendant's conviction for the crime of first degree perjury. The defendant claims that the evidence to support his conviction was insufficient because the falsity of his sworn statement before the Colorado Springs Beer and Liquor License Advisory Board was not established in a manner consistent with the so-called "two witness" rule applicable to perjury prosecutions. We reject the defendant's claim.

## A.

The Colorado Criminal Code, which was enacted in 1971, states that "[a] person commits perjury in the first degree if in any official proceeding he knowingly makes a materially false statement, which he does not believe to be true, under an oath required or authorized by law." § 18-8-502(1), 8B C.R.S. (1986). As part of the statutory scheme proscribing perjury, the General Assembly also incorporated into the Colorado Criminal Code the common law "two witness" rule, which prohibited a perjury conviction when the only evidence of the falsity of the accused's sworn statement was the uncorroborated testimony of a single witness. *See United States v. Wood*, 39 U.S. 360, 14 Pet. 430, 10 L.Ed. 527 (1840); R. Perkins and R. Boyce, Criminal Law 523 (3d ed. 1982); 7 J. Wigmore, Evidence § 2040, at 360 (Chadbourne rev. 1978). Section 18-8-506, 8B C.R.S. (1986), provides, in this respect, that in a perjury prosecution the falsity of a statement "may not be established solely through contradiction by the uncorroborated testimony of a single witness." This statutory provision is consistent with Colorado case law predating the enactment of the Colorado Criminal Code. *E.g., Lindsay v. People*, 119 Colo. 438, 204 P.2d 878 (1949); *People v. Anderson*, 117 Colo. 342, 187 P.2d 934 (1947); Comment, § 40-8-506, 12 C.R.S. (1971 Perm.Supp.). These cases held that in a perjury prosecution the falsity of the accused's sworn statement must be proved by the testimony of two witnesses, or by the testimony of one witness and other independent corroborative evidence

which is of equal weight to the testimony of another witness.

Since section 18–8–506 is a codification of the "two witness" rule developed at common law,[4] we may appropriately look to the common law as an interpretive aid in determining the proper scope of the statute. § 18–1–104(3), 8B C.R.S. (1986); *see People v. Berry*, 703 P.2d 613 (Colo.App.1985).

### B.

The purpose of the "two witness" rule is to prevent a perjury conviction from resting "entirely upon 'an oath against an oath.'" R. Perkins and R. Boyce, *supra*, at 523. It has been observed that the rule originated "in practice in the Star Chamber and was adopted into the common law because of a fear of the situation created by an oath against an oath." ALI, Model Penal Code & Commentaries § 241.1, commentary at 137 (1980). As the United States Supreme Court made clear in *United States v. Wood*, 39 U.S. 360, 14 Pet. 430, decided 148 years ago, this rule was never intended to apply when the prosecution's evidence stems solely from documents originating from the defendant himself.

In *Wood*, the defendant's conviction for perjury was based on his false swearing to the truth of an invoice for imported goods. The prosecution's evidence of the falsity of the defendant's sworn statement was established solely by the following documentary evidence: the seller's invoice book showing that the defendant knew the goods were valued at an amount greater than that to which he swore, and several letters from the defendant to the seller acknowledging that the invoice book re-corded the actual value of the goods. After tracing the common law history of the "two witness" rule, the Supreme Court concluded that "cases may occur when the evidence comes so directly from the defendant, that the perjury may be proved without the aid of a living witness." 39 U.S. at 369, 14 Pet. at 439. Proceeding from the premise that the "two witness" rule rests upon the "apprehension that it would be unsafe to convict in a case where there is merely the oath of one man to be weighed against that of another," the Court reasoned that if circumstances exist which permit the falsity of the sworn statement to be established by the testimony of one witness plus sufficient corroborative evidence, then it follows that there are circumstances which should permit the falsity of a sworn statement to be established by written documents "proved to have been in the knowledge of the person charged with the perjury, when it was committed, especially, if such written proofs came from himself, and are facts which he must have known, because they were his own acts." 39 U.S. at 369, 14 Pet. at 439. In such a case, the Court concluded, "the reason for the rule ceases." *Id.*

The Court in *Wood* then turned to the particular types of cases in which the "two witness" rule is inapplicable. We quote at length from the opinion in order to fully set forth the full import of the Court's rationale for dispensing with the "two witness" rule in these cases:

> [I]n what cases may a living witness to the *corpus delicti* of a defendant, be dispensed with, and documentary or written testimony be relied upon to convict?

---

4. Although it has frequently been argued that the rule is incongruous in our present day system of justice, which permits the accused to testify in his own behalf, *e.g., State v. Storey*, 148 Minn. 398, 182 N.W. 613 (1921); *Hourie v. State*, 53 Md.App. 62, 452 A.2d 440 (1982); *see generally*, Comment, *Proof of Perjury: The Two Witness Requirement*, 35 So.Cal.L.Rev. 86 (1961); Case Note, 28 Geo.Wash.L.Rev. 786 (1960), contrary arguments, such as the protection of innocent witnesses from the subsequent harassment and retaliation of a perjury prosecution as a result of their testimony, have been advanced as well for retaining the rule. *See, e.g., Weiler v. United States*, 323 U.S. 606, 608–10, 65 S.Ct. 548, 549–50, 89 L.Ed. 495 (1945); *see generally*, ALI, Model Penal Code & Commentaries § 241.1, commentary at 137–41 (1980); Orfield, *Proof of Perjury and the "Two Witness" Requirement in Federal Criminal Cases*, 17 Sw. L.J. 227 (1963). While a few states have eliminated entirely the requirement that the testimony of a single witness be corroborated, Colorado joins several states in formulating its statutory version of the "two witness" rule to require that the testimony of a witness as to the falsity of the defendant's sworn statement be corroborated by other evidence. *See* ALI, Model Penal Code & Commentaries § 241.1, commentary at 140 nn. 125 and 126.

We answer, to all such where a person is charged with a perjury, directly disproved by documentary or written testimony springing from himself, with circumstances showing the corrupt intent. In cases where the perjury charge is contradicted by a public record, proved to have been well known to the defendant when he took the oath; the oath only being proved to have been taken. In cases where a party is charged with taking an oath, contrary to what he must necessarily have known to be the truth, and the false swearing can be proved by his own letters, relating to the fact sworn to; or by other written testimony, existing and being found in the possession of a defendant, and which has been treated by him as containing the evidence of the fact recited in it.

Let us suppose a case or two, in illustration of the positions just laid down. A defendant, in two answers to a bill in equity, swears unequivocally to a fact, and as positively against it. A document is produced, executed by himself, decisive of the truth of the fact. In such a case, can a living witness be wanted; or could any number of living witnesses prove, more certainly, the false swearing, than it would be proved by the document and the defendant's contradictory oaths? Or, take the case of defendant being sued in equity, to recover from him the contents of a lost bond. In answer to a call upon him to say whether he had or had not made such a bond, he swears that he never had made such a bond. The bond is afterwards found and proved; is not his answer, then, upon oath, disproved by a circumstance, stronger than words can be, coming from the mouth of man? Again, suppose a person, in order to obtain a right under a statute, is required to take an oath to a fact which is the mutual act of himself and another, and which from its nature is unequivocal. He swears contrary to the fact. Subsequently, his letters, written before and after his oath, are found; which disclose not only the real fact, but a general design to misrepresent facts of the same kind, and a book or other written paper is produced, bearing directly upon the fact, from its being the original of the transaction, reduced to writing contemporaneously with its occurrence, and recognized by the defendant to be such, though it is in the handwriting of another; will not the defendant's recognition of it, with the auxiliary evidence of the letters, without a living witness to speak directly to the *corpus delicti* of the defendant, justify the whole being put before a jury, in a case of perjury; for them to decide whether the defendant has sworn falsely and corruptly? In such a case, if the person was called in whose handwriting the book or other written paper was, it might happen, that he had only been the recorder of the transaction, at the instigation of one of the parties to it, without his ever having had any communication with the other respecting its contents. The witness then would only prove so much, without proving anything which bore upon the charge of false swearing. But when the defendant himself has recognised the book or writing as evidence of his act (and such recognition is proved), there is no rule of evidence which requires other proof, beyond his admission, to prove the contents of the book or paper to be true. But suppose, the book or written paper to be also in the handwriting of the defendant, and that several of his letters confirm the fact, that he has sworn contrary to the contents of the first (as all the evidence comes from himself), we cannot doubt, it would be right to place the whole before a jury, for it to judge what was the truth of the fact, and whether the defendant had sworn falsely and corruptly.

39 U.S. at 370–71, 14 Pet. at 441–42.

The rationale for the exceptions to the "two witness" rule which the Court formulated in *Wood* has been followed in many subsequent cases. *See, e.g., Hammer v. United States*, 271 U.S. 620, 627, 46 S.Ct. 603, 604, 70 L.Ed. 1118 (1926) ("Undoubtedly in some cases documents emanating from the accused and the attending circumstances may constitute better evidence of

such falsity than any amount of oral testimony."); *Stassi v. United States*, 401 F.2d 259 (5th Cir.1968), *vacated on other grounds*, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969) ("two witness" rule inapplicable where government's evidence of falsity rested on documentary evidence); *United States v. Flores–Rodriguez*, 237 F.2d 405 (2d Cir.1956) (falsity of defendant's oath that he had never been convicted of any offense proven by defendant's earlier signed and sworn statement admitting a conviction and by certified copy of conviction record); *United States v. Rose*, 215 F.2d 617 (3d Cir.1954) (defendant's sworn testimony denying that he had a safety deposit box proved false by entrance cards signed by defendant and by bank's rental records).[5]

### C.

■ In light of the long-recognized exceptions to the "two witness" rule, we are satisfied that the General Assembly's codification of the "two witness" rule in section 18–8–506 was not intended to preclude a conviction for perjury in those situations in which the rule was not applicable at. common law—that is, as pertinent here, in a case where the falsity of the defendant's sworn testimony is clearly established by documentary evidence originating from the defendant himself. Section 18–8–506, therefore, is applicable only in those perjury prosecutions in which the falsity of the accused's sworn statement is established by the testimony of another witness, rather than by documentary evidence emanating from the defendant.

Although the court of appeals analyzed the sufficiency of the evidence in the context of the "two witness" rule, we believe this case presents the very situation in which the documentary evidence exception to the rule is applicable. In light of that exception, we are satisfied that the prosecution's documentary evidence clearly established the falsity of the defendant's sworn testimony before the Colorado Springs Beer and Liquor License Advisory Board on June 17, 1983. One of the critical documents relied upon by the prosecution was the sworn statement signed by the defendant on April 2, 1973, and filed with the Washington State Liquor Control Board, in which it was stated that the defendant held 412 shares of the 1,250 outstanding shares of Howven, Inc. The other critical document was the minutes of March 2, 1973, for the meeting of the board of directors of Howven, Inc., which were also signed by the defendant as secretary of the corporation and stated that the secretary-treasurer shall issue 25 percent of the outstanding stock to Steven M. Fueston. The authenticity of both these documents was never disputed, and the defendant himself admitted at trial to the authenticity of his signatures on both documents.

■ The sworn statement of the defendant filed with the Washington State Liquor Control Board and the corporate minutes of March 2, 1973, clearly and directly point to the falsity of the defendant's sworn testimony before the Colorado Springs Beer and Liquor License Advisory Board to the effect that he had no knowledge of any shares of Howven, Inc. ever having been issued to him and that he was never issued any stock certificates. Since the prosecution's evidence was clearly sufficient to support a conviction for first degree perjury, we affirm that part of the judgment

---

5. Section 18–8–505(1), 8B C.R.S. (1986), recognizes another exception to the "two witness" rule by providing as follows:

   Where a person charged with perjury or false swearing has made inconsistent material statements under oath, both having been made within the period of the statute of limitations, the prosecution may proceed by setting forth the inconsistent statements in a single count alleging in the alternative that one or the other was false and not believed by the defendant. In such case it shall not be necessary for the prosecution to prove which statement was false but only that one or the other statement was false and not believed by the defendant to be true.

   This statutory exception, of course, is not applicable to this case, since the prior sworn statement of the defendant in the document of April 2, 1973, filed with the Washington State Liquor Control Board, was beyond the three year statute of limitations applicable to the perjury prosecution in this case. § 16–5–401(1)(a), 8A C.R.S. (1986).

upholding the defendant's conviction for that crime.[6]

## III.

We next address whether the court of appeals erred when it ordered the trial court on remand of the case to dismiss with prejudice the charge of offering a false instrument for recording because the allegations in that charge failed to properly allege a crime. We conclude that the court of appeals erred in its order of remand.

■ The information charging the defendant with offering a false instrument for recording stated that he presented and offered the instrument "knowing it contained a materially false statement and materially false information," but failed to allege which of the many statements in the instrument were false. The charge, therefore, was not "sufficiently definite to inform the defendant of the charges against him so as to enable him to prepare a defense and to plead the judgment in bar of any further prosecutions for the same offense." *People v. Donachy*, 196 Colo. 289, 293, 586 P.2d 14, 17 (1978) (quoting *People v. Westendorf*, 37 Colo.App. 111, 542 P.2d 1300 (1975)); *see also People v. Tucker*, 631 P.2d 162 (Colo.1981).

There is no constitutional or statutory impediment to retrying a defendant, however, where, as here, the defendant appeals his conviction on the basis of a fatally infirm charge and "the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean." *North Carolina v. Pearce*, 395 U.S. 711, 721, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969); *see also United States v. Ball*, 163 U.S. 662, 671–72, 16 S.Ct. 1192, 1195–96, 41 L.Ed. 300 (1896); *People v. Moore*, 200 Colo. 481, 615 P.2d 726 (1980); *People v. Garner*, 187

Colo. 294, 530 P.2d 496 (1975); *Young v. People*, 54 Colo. 293, 299, 130 P. 1011, 1013 (1913). Indeed, just recently the United States Supreme Court reaffirmed the longstanding principle of double jeopardy jurisprudence that the "successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge." *Montana v. Hall*, — U.S. —, 107 S.Ct. 1825, 1826, 95 L.Ed.2d 354 (1987) (per curiam) (citation omitted).

Since the defendant is thus subject to retrial under a valid charging document, the court of appeals erred when it ordered the trial court on remand of the case to dismiss with prejudice the charge of offering a false instrument for recording. We therefore reverse that part of the judgment of the court of appeals which orders the trial court to dismiss the information with prejudice.

## IV.

In summary, we affirm the defendant's conviction for first degree perjury, and reverse that part of the judgment which orders the trial court to dismiss with prejudice the charge of offering a false instrument for recording. The case is remanded to the court of appeals with directions to return the case to the trial court for further proceedings, consistent with the views herein expressed, relating to the charge of offering a false instrument for recording.

---

**6.** In his reply brief the defendant raises for the first time the appropriateness of the jury instruction which stated that the crime of perjury must be proved by the testimony of two witnesses, or the testimony of one witness plus independent corroborating circumstances of equal weight to the testimony of another witness. The defendant contends that the omission of the alternative documentary exception to the "two witness" rule constitutes reversible error. Because this issue was not raised below, we will not address it here. *E.g., People v. Mattas*, 645 P.2d 254 (Colo.1982); Crim.P. 30. We note in passing, however, that the instruction as given actually inured to the benefit of the defendant, in that it imposed a greater burden on the prosecution than was actually required under the documentary exception to the "two witness" rule.